Ingram, Carpenter and Chamberlin *v.* State.

Opinion delivered December 22, 1913.

1. Burglary—evidence—sufficiency.—Evidence held sufficient to warrant a verdict of guilty, where defendants were indicted for burglary. (Page 541.)

2. Evidence—identification of property.—Evidence of statements of prisoner in jail as to where he had secreted certain property; *held,* admissible as tending to identify the property found. (Page 541.)

3. Trial—improper argument of counsel—removal of prejudice.—In a criminal trial where the prosecuting attorney indulged in improper argument, the prejudice thereby created is removed by the court, if it promptly admonishes the jury to disregard the argument, and the prosecuting attorney makes a retraction of the improper remarks. (Page 543.)

Appeal from Benton Circuit Court; *J. S. Maples,* Judge; affirmed.

*J. W. Walker,* for appellant.

This cause should be reversed because of improper conduct of the counsel of the State. 73 Ark. 148; 89 *Id.* 304.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

The arguments of counsel for the State were not prejudicial. 73 Ark. 151; 96 *Id.* 7; *Ib.* 177; 108 Ark. 508.

Hart, J. Appellants prosecute this appeal to reverse a judgment of conviction against them upon the charge of burglary.

On the night of the 27th day of May, 1913, the storehouse of L. H. Crawford, in the town of Decatur, in Benton County, Arkansas, was burglarized, and a quantity of goods stolen therefrom. Crawford states that he left the storehouse about 10 o'clock on the night of the 27th of May, 1913, and returned to it about 7 o'clock on the morning of the 28th. When he entered the store he discovered that his store had been broken into and a lot of goods taken therefrom. He found a broken buggy spring on the inside of the store, and saw the marks where the buggy spring had been put under a window and had pried it up. He missed two leather suitcases, one worth $6 and the other $5.50. There was also missing a cloth

suitcase worth $1.50; three pairs of pants; three pairs of shoes; three pocket knives; three watch fobs; about twelve pairs of drawers; eleven undershirts; fifteen or twenty pairs of hose; some handkerchiefs and other articles, and $5.10 in money. He said the property taken, and which was afterward returned to the store and identified, invoiced about $80. He said it was his custom to leave one dollar, two fifty-cent pieces, four quarters, ten dimes, nineteen nickels and fifteen pennies in the money drawer. That he had done so on the night his store was burglarized, and that he missed the same on his return to the store the next morning.

Appellants were seen to alight from a freight train at the town of Decatur on the day preceding the night of the burglary. A blacksmith in the town saw one of them standing near an old pile of buggy springs during the day, apparently looking at them. In a few minutes he left and rejoined his companions, who were the other two appellants. The piece of buggy spring found in the store by Crawford on the next morning after the burglary was fitted to a piece on the pile, and it was ascertained, by means of a splotch of white paint on the piece found in the store and on the piece to which it was fitted, that they corresponded exactly. Lloyd Carpenter, one of the appellants, had been going to Decatur at intervals for some time prior to the burglary, and had been visiting the daughter of the night watchman. Some time after supper on the night of the burglary, he was seen on the porch at the night watchman's house. On the next morning after the burglary, Carpenter was arrested in the town of Decatur, and the night watchman remarked to him: "I thought you were gone." Carpenter replied: "I did start, but I took a notion to come back home. I got off at the water tank and stayed all night." He further stated that the other two boys went on. This conversation occurred before the other appellants had been arrested. They were arrested at the water tank on the morning after the burglary, and stated that they and Carpenter had stayed there all night and that no one else had stayed there. After they were arrested, a

search was made for the goods, and, in a thicket near the water tank, two leather suitcases were found, covered with weeds. The suitcases contained three pairs of shoes, three pairs of pants, six collars, three watch fobs, three pocket knives, some jewelry, handkerchiefs and hose, and several suits of underwear. Later on, a cloth suitcase was found, and all this property was identified by Crawford and his clerk as belonging to him. The boys were searched, and some money, consisting of small change and some bills, was found on them. Some cartridges for an automatic pistol were also found on Chamberlin, one of the appellants. Chamberlin stated that he had left his pistol at home.

The deputy sheriff received information that an automatic pistol was hid near the water tank, and made an investigation and found a forty-five automatic pistol and box of cartridges with it. The water tank was north, or northwest, of Decatur; and on the next morning after the burglary, between 8 and 10 o'clock, a witness met appellant, Carpenter, somewhere northwest of Decatur, and Carpenter asked him if there was a road to Gentry. Witness told him the nearest way to Gentry was to go by Decatur down the railroad track, and asked Carpenter if he was hunting work or "hoboing." Carpenter replied that he was looking at the country. He went on back to Decatur with the witness. On the night of the burglary, Carpenter was seen in the town of Decatur after the berry train went north. It was proved by appellants that a great number of transient people were in town on the night of the burglary on account of the berry season, and that appellant, Carpenter, left the night watchman's house and proceeded toward the depot, stating that he and the other appellants were going to leave on the berry train going north that evening. The night watchman bade him goodbye a short time before the train left and thought that he and the other appellants left on the train.

It is first insisted by counsel for appellants that the testimony is not sufficient to convict them. The testi-

mony is meager, but when it is all considered together, we think it is sufficient to support the verdict. The undisputed evidence shows that the store of Crawford was burglarized on the night of the 27th of May, 1913, and that a quantity of goods was taken therefrom, including three suitcases and some small change amounting to about five dollars. Appellants admit that they stayed all night that night at the water tank north of Decatur, and that no one else had stayed there. The suitcases containing the goods taken from the store of Crawford were found concealed in a thicket with some weeds piled over them, near the water tank where appellants had stayed all night. Carpenter was arrested, and, before he knew the other appellants had been arrested, stated that he had stayed at the water tank by himself and the others had gone on. The other appellants stated that they had all stayed at the water tank. Carpenter had told the night watchman that he, in company with the other appellants, intended to leave Decatur on the night of the burglary and had gone down to the depot to leave on the berry train. It is true the night watchman testified that he saw him there and that he, in company with the other appellants, left on that train; but other witnesses stated that they saw him on the night watchman's porch in the town of Decatur on the night of the burglary after the berry train had gone north. It appears that the window of the store had been pried open with a piece of buggy spring, which had a splotch of white paint on it; and this piece of buggy spring exactly fitted to another piece of a buggy spring, with a splotch of white paint on it, lying on a pile near a blacksmith shop; and the blacksmith had seen one of the appellants apparently examining this pile of springs on the day preceding the burglary. When all these facts and circumstances are considered together, they point to the guilt of appellants with sufficient certainty to warrant their conviction.

It is next contended by counsel for appellants that the court erred in admitting evidence that one of the prisoners confined in the jail with appellants told the

deputy sheriff that Chamberlain had told him that he had an automatic pistol hid near the water tank. Upon an examination of the transcript, we do not find that the court permitted the deputy sheriff to testify that one of the prisoners had informed him that Chamberlin had told him that he had a pistol near the water tank. The deputy sheriff was only permitted to state that he received information that an automatic pistol was hid near the water tank, and went there and made a search and found this to be true. This testimony was competent because Chamberlin, one of the appellants, had admitted that he had stayed all night at the water tank and some cartridges for an automatic pistol were found on him, and the testimony was competent tending to show that the pistol found belonged to Chamberlin.

It is finally insisted by counsel for appellants that the judgment of conviction should be reversed because the prosecuting attorney was allowed to comment to the jury on the fact that appellants had failed to testify. The court, at the request of appellants, had already instructed the jury that, while the appellants had a right to testify, the fact that they did not do so was no evidence of their guilt and was not to be considered by the jury as a circumstance against them. When the prosecuting attorney referred to the fact that appellants had failed to testify, the court again repeated this instruction to the jury and told them that they should not consider the reference of the prosecuting attorney to the fact that appellants had failed to testify. The prosecuting attorney then told the jury that he withdrew his statement, and also said for them not to consider it.

This question has never before been directly passed upon by this court. In the recent case of *Tiner* v. *State,* 110 Ark. 251, which was reversed for other reasons, we said that a prosecuting attorney should never comment on the fact that a defendant has failed to testify, but we withheld any opinion as to whether such comment would be reversible error, where the court directs the jury to disregard it. Kirby's Digest, § 3088, provides, in sub-

stance, that on the trial of all indictments against persons charged with the commission of a crime, the person so charged shall, at his own request, but not otherwise, be a competent witness, and that his failure to make such request shall not create any presumption against him. In the case of *Commonwealth* v. *Richmond*, 207 Mass. 240, 20 Ann. Cas. 1269, the court held that the rule that the attention of the court should be at once called to an improper argument addressed to the jury, and that the subject must be adequately covered in a charge with such emphasis as will correct any erroneous effect, applies to unwarranted arguments by a district attorney respecting the failure of the accused to take the stand in his own behalf. It appears from the opinion, and from an extensive case note thereto, that there are two lines of decisions on the subject. Some courts hold that any reference to the subject in argument must be presumed to do irreparable harm to the defendant and constitutes reversible error. Our examination, however, of the recent cases on the subject leads us to the conclusion that there is a tendency now for courts to hold that where such reference has been made and is withdrawn and corrected by the charge of the court it does not constitute reversible error.

In the present case, as soon as the attention of the court was called to the fact, he called attention to the jury that he had already instructed them not to consider the fact that appellants had failed to testify, and again adequately covered in his charge to them the law on this subject. The prosecuting attorney withdrew his statement from the jury; and we think that any prejudice that might have occurred to the rights of appellants by the comment of the prosecuting attorney was entirely removed by the prompt action of the court in stopping him and in fully covering the law of the subject in his instructions to the jury. We think the disclaimer of the prosecuting attorney of his intent to urge any inference of guilt from appellants' failure to testify, coupled with the plain instructions of the court in the charge, in ac-

cordance with the statute, protected the rights of appellants, and it must be understood that the jury acted upon the directions given them by the court. In the case of a flagrant abuse in this respect on the part of the prosecuting attorney, the court should severely reprimand him and take such other action as will be necessary to entirely remove from the minds of the jury any prejudice that might result to the defendant from such argument of the prosecuting attorney.

The judgment will be affirmed.