MORRIS AND FRANCE *v.* STATE.

4129                              132 S. W. 2d 785

Opinion delivered October 2, 1939.

*Partain & Agee* and *Batchelor & Batchelor,* for appellants.

*Jack Holt,* Attorney General, and *John P. Streepey,* Asst. Atty. General, for appellee.

HUMPHREYS, J. Informations were filed in the circuit court of Crawford county, Arkansas, by the prosecuting attorney of that district charging appellants jointly in one information with the crime of larceny on the 21st day of September, 1938, with unlawfully, willfully and feloniously stealing, taking and carrying away one brindle heifer with horns, and one jersey heifer with horns, each weighing about four hundred pounds and branded with "M" on hip, the property of Dr. May, and one bull calf mixed with jersey weighing about three hundred pounds, the property of Fred Smith, with the unlawful and felonious intent then and there of depriving the said owners of their said property; and charging appellants jointly in the other information with the crime of larceny on the first day of October, 1938, with unlawfully, willfully and feloniously stealing, taking and carrying away one roan heifer calf weighing about four hundred pounds, and one white faced heifer calf weighing about four hundred pounds, and one motley-faced bull calf weighing about three hundred and fifty pounds, the property of W. F. Wright with the unlawful and felonious intent then and there of depriving said owner of his said property.

1042

The first information was docketed as case number 3415, and the second as case number 3416.

When the cases were called for trial each defendant, appellants herein, through their respective attorneys, moved for a severance of their cases in order that they might be tried separately, which motions were overruled by the court over the objection and exception of each defendant.

The cases were then consolidated for the purposes of trial by the court without objection or exception by either defendant.

The consolidated cases then proceeded to trial before a jury duly impaneled with the result that the defendants, appellants herein, were convicted under both informations, and penalties imposed against each defendant on information docketed as case number 3415 of one year in the state penitentiary and two years imposed against each defendant on information in case number 3416.

From these verdicts and judgments each defendant has duly prosecuted separate appeals to this court.

They each assign as reversible error the failure of the court to sever their cases. The motion to sever the cases assigned no reason why they should be severed.

The defendants were not indicted for capital offenses and, hence, they were not entitled as a matter of law to separate trials. They were indicted for felonies less than capital and might be tried either jointly or separately, in the discretion of the trial court. Section 3976 of Pope's Digest provides as follows: "When two or more defendants are jointly indicted for a capital offense, any defendant requiring it is entitled to a separate trial; when indicted for a felony less than capital, defendants may be tried jointly or separately, in the discretion of the trial court."

At the time the motions were made to sever, nothing was before the court except the information and we cannot say the court abused his discretion in overruling the motions. We ruled in the recent case of *Graham and*

*Seaman* v. *State*, 197 Ark. 50, 121 S. W. 2d 892, that when two persons were charged with a felony not capital, the denial of the motion for a severance was within the discretion of the trial court, and was reversible only when that discretion had been abused.

The court did not err in overruling the motions for a severance.

According to the record, the cattle described in the two informations had been running, prior to their disappearance, with other cattle belonging to the same parties, on both sides of highway No. 71 a few miles from Mountainburg near Lake Ft. Smith and a part of the time in the Lake Ft. Smith property. A short time after the cattle disappeared the owners, with the aid of George Collins, the constable of the township, and the sheriff of the county, instituted a search for the cattle. It was suspected that they had been stolen so they went to the Ft. Smith market, the Springfield, Missouri, market and the Joplin, Missouri, market, in an effort to find whether they had been sold and by whom. The search through the community and these markets for the cattle caused much comment among the people, and finally Claude Morris was arrested for stealing them. Shortly before his arrest as well as after his arrest he made a statement to the officers and others that on September 22, in the night time, he hauled the brindle heifer with horns and the jersey heifer with horns, branded with "M" on the hip and a bull calf mixed with jersey for his co-defendant, Charley France, to the Joplin, Missouri, market; that his co-defendant, Charley France, told him that the two heifers belonged to him, and that the bull calf belonged to his brother, Logan; that Charley France accompanied him to Joplin and assisted in the sale of them; that Charley France sold them in the name of Claude Morris, and that he, Morris, received a check for them, cashed same and, after taking out his pay for hauling them, amounting to $12.50, he paid the balance of the money to Charley France, and, on the way back, France bought some apples about five miles from Springdale. He also told the investigators and other parties that on

1044

October 1, 1938, he hauled the roan heifer, the white-faced heifer and the motley faced red bull in the night time for his co-defendant, Charley France, to the Joplin, Missouri, market where they were sold by France who received a check for them, and that out of the proceeds of the check France paid him $12.50 for hauling them up there; that he thought they belonged to Charley France. On the trial of the causes, he testified confirming the statements he had made to the officers and others. After Claude Morris made these statements, Charley France was arrested, and he stated that Claude Morris was employed by him on or about September 22 to haul two heifers of his own to the Joplin, Missouri, market and to sell them for him; that there was no bull calf loaded in the truck; that he went as far as Springdale with Morris and got out there for the purpose of buying some apples and waited until Morris returned from Joplin; that he returned in the afternoon and paid him $60 out of the amount he had received after deducting $12.50 from the amount they brought for his services in hauling them; that this was the only load of cattle that Morris ever hauled for him; that if the bull calf mixed with jersey was in the load he was stolen elsewhere after he, France, got out of the truck at Springdale. He stated that he knew nothing about the cattle belonging to W. F. Wright which Morris stated he had loaded at his house, and that he never employed him to sell that load of cattle and did not accompany him to Joplin and assist him in the sale of same and did not receive any part of the proceeds from the sale of the Wright cattle. Relative to the brindle heifer and jersey heifer, which he employed Morris to haul to Joplin to sell, he stated that they were his individual property; that he and Dr. May had been raising cattle for six or seven years; that May would buy them and send them up to him, and that he would furnish the feed and raise them, and that when he sold them he would give Dr. May half the money; that about a year before the disappearance of two of the cattle in which he and May were interested, they had divided the cattle they had raised up to that time, and that May had taken his

part to Fort Smith and sold them, and that he had sold six or seven of his part to his brother, Logan; that his brother had later turned two of them back to him to assist him in paying a note that he owed the bank, and that the two heifers he employed Morris to haul to Joplin were these two. On the trial of the cause he testified in substance confirming the statements he had made to the officers and others.

Dr. May testified in the course of the trial that he was jointly interested with appellant, Charley France, in raising cattle; that he bought them and sent them up to France to raise, and that France had a right to sell the cattle at any time he chose under their agreement.

Several witnesses were brought from Joplin, Missouri, connected with the stockyards and sales market who testified, in substance, that appellants brought both loads of cattle to Joplin about the times set out in the respective informations, and that they were sold to Owens Brothers Commission Co., who issued checks in payment of same. A witness by the name of Friend, who was connected with the Owens Brothers Commission Co., testified over the objection of appellant, Charley France, that the check issued for the first load of cattle was made payable to France when he admitted that he himself had only drawn the check in blank and had not inserted the name of the payee.

At the conclusion of the state's evidence, and at the conclusion of all the evidence appellants filed a motion to dismiss the charges against them for stealing the Dr. May's heifers on the ground that the undisputed evidence showed that they were the individual property of Charley France, and for the further reason that, if they were owned jointly by Dr. May and Charley France, he, France, had the right to sell the heifers without the consent of Dr. May. The court overruled the motions, and appellant, Charley France, as well as Morris, asked instructions to the effect that if the cattle were the property of Charley France individually or if they found that they were joint owners of the property, but further found

that Charley France had a right to sell them without the consent or permission of Dr. May the jury should acquit both appellants of the charge against them for stealing the two heifers known as the May heifers. The court refused to give these instructions over the objection and exception of appellants. The appellants assign as reversible error the refusal of the trial court to instruct a verdict of not guilty as far as the cattle were concerned which were alleged in the informations to be the property of Dr. May and of the refusal of the trial court to give the instructions requested by appellants to that effect.

A person cannot, of course, be convicted of selling his own property or for employing any other person to sell same, nor can one be convicted for stealing the property of another by selling same when the other person jointly interested has given him permission to sell the property.

Dr. May admitted that, even if he were jointly interested in the cattle with France, under their agreement, he had given him permission to sell them, and that he had a right to sell them without his (Dr. May's) permission. The court in refusing to acquit the defendants did commit error in refusing to instruct a verdict of not guilty in favor of appellants and in failing to give an instruction to that effect, but it was not reversible error for the reason that it did not result in any prejudice to appellants. The information charging them with stealing the May cattle also charged them with stealing one bull calf mixed with jersey which was the property of Fred Smith. If they were guilty of stealing the Smith bull calf they would be guilty of the crime of larceny subject to a penalty of not less than one year in the penitentiary. This was the extent of the penalty imposed under the information that charged them with larceny on or about the 22nd of September, 1938. Of course, if a greater penalty had been imposed upon them than the minimum fixed by law some prejudice might have resulted against them, but since they received the minimum punishment only we are unable to see how they were

prejudiced, provided, of course, that the evidence was sufficient to sustain a conviction of the charge for stealing the Fred Smith bull calf.

Appellants assign as error the insufficiency of the evidence to sustain the verdicts against them. The verdicts against Charley France were amply sustained by the testimony of Claude Morris to the effect that he got the Smith calf as well as the Wright calves at Charley France's barn or home, in the night time, and hauled them to the Joplin, Missouri, market and assisted him (Charley France) in selling them if his testimony is sufficiently corroborated by other evidence than his own. We think it is. There is substantial evidence in the record showing that Charley France was present when the cattle were sold at Joplin, and that he assisted in making the sales of the cattle. He denied that he was in Joplin when the Smith bull and the Wright cattle were sold, but the evidence reflects that he was present, participated in the sale and received checks for the proceeds thereof from the sale of the cattle. This was ample evidence to corroborate the testimony of Claude Morris.

It is argued in behalf of Claude Morris that there is no evidence whatever tending to show that he stole the Smith bull or the Wright cattle. He testified that he got them both at Charley France's home or barn, and hauled them to the Joplin market for $12.50 a load, and that he had no knowledge that they were stolen and did not assist in selling them. Charley France testified that he did not get them at his barn or home. Charley France testified that the only two cattle he employed him to haul were the two heifers, and that neither the Smith bull nor the Wright cattle were ever in his possession. We are unable to say just what part of his testimony the jury accepted as true and what part it discarded as untrue. There is no question under this record, but that the Smith bull and the Wright cattle were stolen. The testimony of the disinterested witnesses from Joplin show that both appellants were in possession of the recently stolen cattle and sold them to Owen Brothers Commission Company, and that the money was collected by

either or both of them. Their explanation may not have been satisfactory to the jury. Unless their explanations were satisfactory to the jury the presumption arises from the fact that they were in the possession of recently stolen property, that it was stolen by them. Their explanation of their possession of the cattle was in conflict, and the jury may well have concluded from the whole record that these appellants stole them off the range in Crawford county and hauled them into the Joplin, Missouri, market and sold them. *Daniels* v. *State,* 168 Ark. 1082, 272 S. W. 833; *Bowser* v. *State,* 194 Ark. 182, 106 S. W. 2d 176.

The fact that these cattle were hauled out of Crawford county in the night time and were sold by these appellants in the Joplin, Missouri, market is a strong circumstance against them. It is argued in behalf of Claude Morris that he gave the information which led to the discovery that the cattle had been sold in the Joplin, Missouri, market, but he did not give this information until a considerable length of time after he hauled them to Joplin, Missouri, and helped sell them when he well knew all the time that the officers and owners of the cattle were searching for them. He even went off to Texas without giving the information and gives that fact as an excuse why he did not sooner inform the officers and owners of the cattle that he had hauled them to Joplin for Charley France.

It is argued that the court erred in permitting witness, Friend, to testify that the check for the first load of cattle was made payable to France when he himself had not written the payee's name nor the amount in the check, but had simply issued the check in blank. If the admission of the check was error, it was not prejudicial error for prior to this time in the course of the trial Fred Manning had testified without objection that the check for the first load of cattle was made out to appellant, France, and that the amount of the check was about $60. This court said in the case of *Martin* v. *State,* 177 Ark. 379, 6 S. W. 2d 293, relative to objections of this character to evidence that: ''Even though it might be said

that the testimony was inadmissible, still it would not be prejudicial, as the witness Copeland testified to substantially the same thing without objection from appellant.''

Appellants contend that the instruction given by the court on its own motion attempting to cover the whole case was erroneous. The instruction contained a number of paragraphs, and no specific objection was made to it. A general objection was saved to the instruction. It is not now contended that the instruction was inherently wrong as a whole. Reading it in its entirety we think it fairly presented the issues in the case except as to that portion thereof relative to the Dr. May's cattle, and, as heretofore stated, there was no prejudicial error resulting to appellants on account of the court's refusal to dismiss the case against appellants as to the charge in the information relative to May's cattle. This court ruled in the case of *Bruder* v. *State,* 110 Ark. 402, 161 S. W. 1067, that: Where an instruction given by the court consists of two or more paragraphs, one of which has properly declared the law, a general objection to the instruction is insufficient.

The judgments are, therefore, affirmed.