HOLLAND v. STATE.

4133                                         132 S. W. 2d 190

Opinion delivered October 9, 1939.

Harper & Harper, for appellants.

Jack Holt, Attorney General, and Jno. P. Streepey, Asst. Atty. General, for appellee.

HOLT, J.   The appellants, J. S. Holland, and his two sons, Joe, twenty-one years of age, and Grover, nineteen, were indicted in the Fort Smith district of Sebastian county, Arkansas, for the crime of grand larceny, alleged to have been committed on February 13, 1939. Joe Holland entered a plea of guilty, but J. S. Holland and Grover Holland pleaded not guilty; were tried, found guilty by the jury, and each sentenced to one year in the state penitentiary, with a recommendation by the jury, however, of suspended sentences.

The trial court accepted the jury's recommendation in the case of Grover Holland and suspended sentence,

934

but sentenced each of the remaining defendants, Joe Holland and J. S. Holland, to one year in the penitentiary.

Appellants, on this appeal, urge two errors. They, first, contend that the evidence is not sufficient to support the verdict; and, second, that the trial court erred in refusing to give their requested instruction No. 4.

The evidence, stated in its most favorable light to the state, as we are required to do, is to the following effect: Joe and Grover Holland live with their father on a small farm of about twelve acres a few miles east of Fort Smith, near highway No. 22. In addition to the four-room residence, there are two small barns and a chicken house on the property.

On behalf of appellants, Joe Holland who pleaded guilty testified that he stole the cow .in question and tied her in one of the barns on his father's place at about eight o'clock on the night of February 12th, then went to bed. He got up the next morning about six o'clock, awakened his father, got him up, and after breakfast between .six-thirty and seven o'clock, his father, one of his sisters, and Grover left for town; that after they left he went to the barn, butchered the cow between seven and eight o'clock, cut the carcass into four quarters and hung them in the barn. He further testified that his father, J. S. Holland, and Grover, his brother, knew nothing about his stealing and butchering this cow.

Mr. Kuykendall, one of the arresting officers, testified that he went in company with another officer, Prentice Mattox, with a search warrant to J. S. Holland's place on February 13, 1939, to search for a cow that had been taken the night before from Charlie Cartwell's pasture, and quoting his testimony: "and he said all right, and we went to a little shed or barn, and there was a block and tackle there and skinning knives, and a lot of blood; and I asked him how come that there, and he said that he butchered a calf there; and I looked around and went in the next barn by it in about fifteen or twenty feet, and there were four quarters of beef

hanging up there; and I said that is not a calf, that looks more like a cow; and he said he did not know anything about that. We looked around to find the hide if we could and whatever was taken out of the cow, and there was fresh entrails in the hog pen, where there was four or five hogs; and we searched around and Mattox and myself got in my car and started to town. I asked him about where the boys were and he said they were working and must be in town, and we started to town looking for them, and Joe and Grover Holland come by in an automobile and we caught them at the house; and asked them about the cow hanging in the barn; and Joe Holland said he had brought the cow up there and skinned it. I asked him what he did with the head and he said what did I care about that; and I said I would like to know where it went, and he said that he had sold it, it was a red hide, and sold it to the Midwest Hide & Fur Company; and we loaded them in the car and brought them to the Midwest Hide & Fur Company, and found the hide that they had sold, and it was a jersey hide, a match to the one Cartwell told us he had lost; and looked for the scar on the cow's hip and found the scar; and we went back to Cartwell's place, and got him and took him over there to identify the hide as his hide, and he identified the hide from the cow he lost the night before.''

He further testified: ''Q. How far is this barn from the house? A. The first barn is fifteen or twenty feet from the house, and the next one is on the same lot. Q. How far was this barn where you found the cow, or beef, from the house? A. It was in the last barn, I cannot tell you the exact feet, not over sixty or seventy feet.'' He further testified that the carcass was cut into four quarters and was warm at the time he examined it.

Prentice Mattox testified that they first went in the garage where there was a block and tackle hanging lined up against the wall, and they then laid it down and there was fresh blood on it; that he asked appellant, J. S. Holland, where the blood came from and he said that he and Joe had killed a yearling; that he went on into the red barn where the cow was hanging up and he said ''that·

is not a yearling there—that is a cow''; that appellant, Holland, told him that he would have to talk to the boys about it; that they picked up the boys about that time, and at first they denied knowing anything about the cow, but later, Joe Holland, told them that he had got the cow from his uncle at Ratcliff; that he would not tell them what he had done with the hide, but later told them that he had sold it to the Midwest Hide & Fur Company, and they went there and recovered the hide; that the hide had a scar on the right-hand side, that they had been told about the night before, and they also recovered the ear, which this witness identifies; that he examined the intestines in the hog pen and they and the beef were still warm; that appellant, J. S. Holland, claimed that he had been up town and just came in, and the boys claimed that they had been up town fooling around.

Charlie Cartwell testified that the cow he lost weighed around 800 or 820 pounds, and was a jersey cow with a scar on the right-hand side, and had a tag in her ear. He positively identified the hide as the hide of his cow. He also identified the number in the cow's ear and stated that he had checked it.

George Taylor testified that he was employed by the Midwest Hide & Fur Company in February of this year, and that the Holland boys brought the hide in and put it on the floor, and Joe went back to the stove, and appellant, Grover Holland, followed him to the office, and he paid him for the hide and they left; that he paid appellant, Grover Holland, for the hide; that that was the only hide they bought that day. On cross-examination he testified that he paid $1.84 for the hide.

We are of the view that this evidence, when viewed in the light most favorable to the state, is of a substantial nature and sufficient to warrant a conviction in this case.

This court in the recent case of *Jefferson* v. *State*, 196 Ark. 897, 120 S. W. 2d 327, restated the rule as follows: ''It is contended by appellant that the evidence is not sufficient to sustain the verdict. The rule

as to the sufficiency of the evidence in such cases has been many times announced by this court as follows: 'The rule is well settled that the evidence adduced at a trial will, on appeal, be viewed in the light most favorable to the appellee, and if there is any substantial evidence to support the verdict of the jury, it will be sustained.' Citing *Slinkard* v. *State,* 193 Ark. 765, 103 S. W. 2d 50; *Walls* v. *State,* 194 Ark. 578, 109 S. W. 2d 143."

We are also of the view that the verdict of the jury in this case must be sustained on another ground, and that is that proof of possession of recently stolen property, unexplained to the satisfaction of the jury, is sufficient to uphold a conviction.

In *Morris* v. *State,* 197 Ark. 778, 126 S. W. 2d 93, this court said: ". . . The possession of recently stolen property, if unexplained to the satisfaction of the jury, is sufficient to sustain a conviction either of larceny or of receiving stolen property. It was a matter for the jury to determine the reasonableness and sufficiency of the explanation given by appellant of his possession of the stolen property. *Daniels* v. *State,* 168 Ark. 1082, 272 S. W. 833, and cases cited therein; *Bowser* v. *State,* 194 Ark. 182, 106 S. W. 2d 176, . . ."

We cannot agree with appellants' contention that the court erred in refusing to give requested instruction No. 4. That instruction is as follows: "No. 4. You are instructed that in this case the state is relying upon circumstantial evidence, and if you find that the evidence is as consistent with innocence as it is with the hypothesis of guilt, you will acquit the defendants, in other words, gentlemen of the jury, a verdict of guilty on circumstantial evidence alone cannot be sustained which does not exclude every reasonable hypothesis but that of guilt."

The record in this case reflects that the state did not rely solely on circumstantial evidence for conviction of appellants. There was some substantial testimony of a direct and positive character. One of the officers testified on behalf of the state that they found fresh blood on the block and tackle, and that J. S. Holland said that he

938

and Joe had just butchered a yearling. The officers further testified that the four quarters of the cow hanging in the barn were still warm, although it was a cold day in February, freezing weather, according to one witness, and officer Mattox testified: "Q. Did you see the intestines of the cow? A. Yes, sir, they were in the hog pen. Q. Did you examine to see whether they were cold or warm? A. They were still warm and so was the beef." In addition, Grover Holland received the money, $1.84, for the hide taken from the cow in question.

In *Daniels* v. *State,* 186 Ark. 255, 53 S. W. 2d 231, this court stated the rule as follows: "Another instruction was refused which told the jury they could not convict unless the offense had been established to the exclusion of every other reasonable hypothesis of the defendant's innocence. The court gave at the request of the appellant correct instructions on the presumption of innocence and reasonable doubt, and, as the state did not rely entirely upon circumstantial evidence, it was not error to modify the instruction in the particular mentioned above or to refuse to grant the other. *Osburn* v. *State,* 181 Ark. 661, 27 S. W. 2d 783, and cases therein cited."

Finding no errors, the judgment is affirmed.