PURTLE *v.* STATE.

4344                                              178 S. W. 2d 65

Opinion delivered February 28, 1944.

*Maurice L. Reinberger,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

HOLT, J. Appellant was charged in one count of an information with grand larceny, it being alleged in substance that he feloniously stole and carried away six chickens, seventy-five jars of fruits and vegetables, thirty large cans of Pet milk and some sweet potatoes of the total value of $56.70, the property of Elbert Podgonick, and in another count with burglary, it being alleged that he feloniously broke into and entered the chicken house of Elbert Podgonick with the felonious intent to steal

and carry away property of the value of more than $10. The jury convicted him on each count and assessed his punishment at five years in the state penitentiary for each offense, or a total punishment of ten years. From the judgment comes this appeal.

Appellant's first contention for reversal is that the evidence does not warrant the jury's verdict.

The State relied largely, if not wholly, on circumstantial evidence, and the appellant upon an alibi.

Appellant, on March 19 and 20, 1943, the time during which the crimes, with which he was charged, were committed, lived in North Little Rock. He owned and operated a ½-ton truck. During Friday night of March 19th and until four o'clock of the following morning, March 20th, appellant admitted to State Police Officer Lindsey and Lt. Oliphant that he was operating his truck, but that he was drinking and did not recall just where he went; that during this time he purchased forty-nine chickens from a man he did not know, and sold them to another man whom he did not know.

On the night in question, Elbert Podgonick, W. D. Mitcham and W. E. Bunting, who live near Sulphur Springs, Jefferson county, Arkansas, lost a large number of chickens and other personal property. Podgonick testified that someone broke into his potato house and stole some sweet potatoes, thirty cans of Pet milk, seventy-five quarts of canned food, and from his barn, six hens and a rooster. Mitcham testified that on the same night, he had twenty-five hens and a rooster stolen from his chicken house, which was fastened with a door. Mrs. Bunting testified that she lived about one-half mile from Podgonick and about four miles from Mitcham, and that on the morning of March 20th, she lost ten hens and a rooster; that the chickens were taken from her hen house, which is usually "hooked and buttoned."

There was evidence of tracks made by an automobile truck and of some one who was wearing boots, at or near the places where the burglary and larceny took place. There was also evidence that appellant wore boots on the night in question and officers, who testified on behalf of

the State and who made casts of the truck and boot tracks above referred to, were of the opinion that the boot tracks were made by the boots worn by appellant at the time, and the truck tracks were those made by the casings on appellant's truck. Appellant denied that he wore boots on the night in question, but Mrs. Green, in the presence of appellant and State Police Officer Lindsey, stated: "No, Charlie (meaning appellant) you wore your boots last night."

There was evidence that appellant on March 15, 1943, had carried a hog to the Rose City Cotton Oil Mill, in North Little Rock, which he had weighed. A record of the weighing of this animal was kept by the weigher in the form of an original weight ticket, which the weigher kept, and two duplicate tickets, which were delivered to the party who brought the hog to be weighed. The evidence further discloses that one of these duplicate tickets was found in the glove compartment of appellant's truck on the morning after the alleged crimes and there was also found by witness, Mitcham, at a point near his home, on the edge of the highway, a duplicate weight ticket, which was identical with the one found in appellant's truck, and the original retained by the weigher. Chicken feathers similar to those found on chickens of the same breeds as those stolen were found in sacks taken from appellant's truck.

We have not attempted to set out all of the testimony in detail. It suffices to say that the above significant facts, together with other testimony of probative value found in the record, when weighed in the strongest light in favor of the State, as we must do (*Holland* v. *State,* 198 Ark. 933, 132 S. W: 2d 190), point strongly to appellant's guilt, and we think warranted the jury's verdict. *Fox* v. *State,* 156 Ark. 428, 246 S. W. 863.

Appellant next argues that the court erred in admitting in evidence, over his objections and exceptions, the two duplicate weight tickets, one of which was found in the glove compartment of his truck and the other near the scene of one of his crimes. We think, however, that these tickets were admissible as important links in the chain

of circumstances pointing to appellant's guilt, and were properly submitted to the jury to be considered and weighed, along with all the other evidence in the case.

In *Bowie* v. *State,* 185 Ark. 834, 49 S. W. 2d 1049, 83 A. L. R. 426, this court held: (Headnote 5) "Where circumstantial evidence is relied on by the State, every fact which might reasonably shed light on the issues should be received and given proper consideration."

Finally, appellant insists that the trial court erred in refusing his motion for a mistrial because of certain comments made by the prosecuting attorney in his opening argument to the jury, on the failure of appellant to testify. On this point, the record reflects: "Thereupon, the prosecuting attorney, in his opening argument to the jury, among other things, said . . . 'that neither his wife nor mother-in-law nor defendant denied it.' Mr. Reinberger: I object, Your Honor. Mr. Smith: I retract anything about him saying anything. Mr. Reinberger: But retracted statements made—I want to object to it, Your Honor. Mr. Smith: I beg the court's pardon and the jury's too. I didn't mean to say he, or anybody else. The Court: Gentlemen of the jury, the statement just made by the prosecuting attorney you must not consider for any purpose at all. It was a statement that should not have been made, and the court wants to impress on you as forcibly as possible that you must not consider it for any purpose at all in the trial of this case. You want to except to that? Mr. Reinberger: Yes, sir. Mr. Reinberger: The defendant at this time excepts to the ruling of the court in permitting this case to go to the jury after the prosecuting attorney had made the statement that the defendant did not deny the statements made by the prosecuting witnesses, and the defendant asks that a mistrial be declared at this time. The Court: The request for a mistrial is denied. Mr. Reinberger: Note our exceptions."

The remark should not have been made by the prosecuting attorney. It was highly improper and would call for reversal of the case but for the timely retraction and apology of the prosecuting attorney and the forceful admonition of the trial court to the jury not to consider

the remark for any purpose. In our opinion, the trial court did everything possible to remove any possible prejudice to appellant's interest by the admonition to the jury, above quoted. Also the record reflects that the court had instructed the jury, at appellant's request, that "On the trial of all indictments, informations, complaints and other proceedings against persons charged with the commission of crimes, offenses and misdemeanors, the person so charged shall, at his own request, but not otherwise, be a competent witness, and his failure to make such request shall not create any presumption against him." We think no error was committed.

This court, in *Starnes* v. *State,* 128 Ark. 302, 194 S. W. 506, where the error complained of was that the prosecuting attorney, in his concluding argument, used this language: "The defendant has not denied a single allegation of the indictment," said: "It is, of course, improper, and presumptively prejudicial, for the prosecuting attorney to call the attention of the jury to the failure of the accused to testify. But the instructions given before this remark was made, and the instructions set out above given immediately thereafter, were sufficient, in our opinion, to remove any prejudice resulting from this remark. These instructions made it plain that the defendant was not required to deny his guilt, and that no inferences of guilt could be drawn from his failure to testify. *Ingram* v. *State,* 110 Ark. 538, 162 S. W. 66."

Finding no error, the judgment is affirmed.