PATRICIA LEA SIMS *v.* STATE OF ARKANSAS

5664                                                477 S.W. 2d 825

Opinion delivered March 20, 1972

*Tackett, Moore, Dowd & Harrelson,* for appellants.

*Ray Thornton,* Atty. Gen., by: *Henry Giner,* Deputy Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Patricia Lea Sims, appellant herein, was convicted of two counts of grand larceny (charged in separate informations) and her punishment fixed at imprisonment in the Arkansas Department of Corrections for two years on each charge. The sufficiency of the evidence for conviction is not questioned, but two asserted errors are relied upon for reversal in this court. First, it is asserted that the court erred in permitting the prosecuting attorney to question appellant about a bond forfeiture for an alleged misdemeanor of vagrancy by prostitution, and it is also contended that the court erred in failing to grant a mistrial after the prosecuting attorney mentioned to the jury that he had wanted to introduce testimony of previous thefts of appellant but the trial judge would not permit him to do so. We proceed to a discussion of these points, but in reverse order.

The nature of the second point is explained by a stipulation entered into between the prosecuting attorney and appellee's counsel, Paragraph I reading as follows:

"Immediately after the Defendant, Patricia Lea Sims, testified on direct examination, leaving an inference that she was well aquainted with the prosecuting witness and their homes, having visited and worked there on numerous occasions, and that she had never before been accused of theft at those homes, the Prosecuting Attorney called the defense attorney to the Judge's bench, and outside hearing of the Jury, suggested to the Trial Judge that he be permitted to introduce proof that on previous occasions when the Defendant was in those homes items had been missed and recovered at her home, and that the prosecuting witnesses believed that the Defendant had stolen those items; that Trial Court Judge Bobby Steel advised the Prosecuting Attorney that he was not permitted to delve into other alleged thefts by the Defendant even though he was permitted to prove any prior criminal convictions of the Defendant.

The stipulation further reflects that during the final argument before the jury, defendant's counsel stated to

the jury that "If the Defendant was a thief it was strange to know why there had not been any evidence adduced to that effect even though the Defendant had been afforded many opportunities to steal in the past while visiting in the prosecuting witnesses' homes as a babysitter and friend of children of her like age." This argument was answered by the prosecuting attorney by commenting to the jury:

"That he had wanted to introduce testimony of previous thefts by the Defendant at the homes of the prosecuting witnesses, that he had approached the Trial Judge in the presence of the defense attorneys and asked the Judge to permit him to introduce such testimony; and that the Trial Judge had ruled that the Prosecuting Attorney would not be permitted to introduce any such testimony unless there had been a conviction of the Defendant concerning same."

Defense counsel objected and moved for a mistrial whereupon the court instructed the jury that the remarks were not admissible and that they should disregard the comments of the prosecuting attorney, and the court further requested that if any member of the jury could not disregard the comments to let it be known by a show of hands. No juror indicated that he could not disregard the remarks; counsel for appellant again moved for a mistrial which the court denied.

We think reversible error was committed, even though the trial court commendably sought to remove any possible prejudice from the minds of the jurors and asked that members of the jury who could not disregard the remarks of the prosecutor should so signify by lifting their hands. We have said that error is presumed to be prejudicial unless it can be clearly shown that it was not. *Cabbiness* v. *State*, 241 Ark. 898, 410 S.W. 2d 867. Though no juror lifted his hand, we are mindful that at that stage of the trial, a juror would have been most reluctant to indicate that a remark made during argument, about an occurrence not in the record, would have any effect upon his thinking.

At first blush, it would appear that counsel for defendant invited the remarks of the prosecutor but a study of

the stipulation reveals that defense counsel said no more than he was perhaps entitled to say. The remark by counsel, as stipulated, was that if Mrs. Sims was a thief, it was strange to know why there had been no evidence introduced to that effect even though opportunities had been afforded when she formerly visited in the homes of the prosecuting witnesses. The only legal evidence that could have been offered during the trial that she was a thief would have been by asking her on cross-examination if she had been convicted of larceny (or if she had committed an act of larceny). This was not done, undoubtedly because the state's attorney knew that there were no such convictions. The evidence that he had sought to offer was that on previous occasions, when appellant was in the homes, items had been missed and recovered at her home, and the prosecuting witnesses believed that she had stolen those items. Of course, none of this evidence was admissible in the current trial, and the learned trial judge so held. The remark by the prosecuting attorney was that he had wanted to introduce *testimony of previous thefts;* however, the stipulation clearly shows that he had not tried to introduce testimony of previous thefts, but had only desired to introduce testimony of suspicious circumstances that indicated appellant might be guilty of theft. After thorough deliberation, we have reached the conclusion that the court should have granted the motion for a mistrial, and committed error by not doing so.

Relative to the first point mentioned by appellant for reversal, the record reveals the following during the cross-examination of Mrs. Sims:

"Q. Let me ask you this. Have you ever earned any money as a prostitute?

A. No, I haven't.

MR. TACKETT:
Your Honor, I thought this young lady was charged with burglary and grand larceny, and we've spent about an hour here talking about everything in the world except burglary and grand larceny. I expect, Your Honor, the reason for

that is because he doesn't have any evidence on burglary and grand larceny.

THE COURT:

This is cross-examination, Mr. Tackett, and he has a wide range of latitude. Go ahead, Mr. Pickett.

Q. Have you ever been charged—

THE COURT:

No, Mr. Pickett, not charged.

Q. Have you ever been convicted of vagrancy by prostitution?

A. No, I wasn't.

Q. You mean to tell me that on March 17, 1971, you didn't post bond and forfeit that bond in the sum of $159.25 on a charge of vagrancy by prostitution?

A. Yes, sir, I was charged, but I wasn't convicted.

Q. You forfeited a bond. Is that correct?

A. Yes.

MR. TACKETT:

Your Honor, without interfering with the cross-examination, I renew my objection.

THE COURT:

The objection is overruled. Members of the jury, at this stage, I should caution you that the only purpose for which evidence of this nature is admissible, is as it may affect the credibility of the witness as a witness in her own behalf in the defense of her case, and for no other purpose should it be considered by you. Only as to her credibility."

We do not seem to have passed on the question of whether a bond forfeiture constitutes a conviction in a misdemeanor case, and no cases are cited to us.[1] However, there is no necessity to discuss that specific question for it is apparent that the objections made do not reach the question of whether it was proper or improper to question appellant about the bond forfeiture. The objection made by counsel (really not an objection) is only that questions are being asked about matters other than burglary and grand larceny. The second objection was simply a renewal of the first. Of course, it was entirely proper to interrogate Mrs. Sims about previous convictions as a matter of going to the credibility of the witness—but the objection that a bond forfeiture did not constitute a conviction, and appellant was thus only being asked about a charge against her, was not made. We find no merit in this contention.

Because of the error in refusing to grant the mistrial, the judgment is reversed, and the cause remanded.

It is so ordered.

FOGLEMAN, J., dissents.

JOHN A. FOGLEMAN, Justice, dissenting. I respectfully dissent. I would affirm this judgment. To begin with, I am of the opinion that the testimony proffered by the prosecuting attorney was admissible in evidence, even though it tended to prove other offenses by appellant. I do not agree with the majority characterization of the proffered testimony as suspicious circumstances only, apparently made because the owners of the lost property *believed* that

---

[1] In the Oklahoma case of *Fox* v. *State,* 331 P. 2d 964, the assistant county attorney asked the defendant whether she had forfeited a bond on a drunken driving charge and also forfeited a bond for reckless driving. The court instructed the jury that the evidence was admissible only for the purpose of affecting the credibility of the witness. The defendant contended that this question was in the nature of asking if she had been charged. The Oklahoma Supreme Court did not agree that error had been committed, stating that it had held adversely to that contention. However, the court seemed to limit the admissibility of the evidence, saying "that where police court bond forfeitures are deliberately made, in cases involving unlawful possession of intoxicating liquor, they are tantamount to a plea of guilty and should be so regarded". However, as pointed out in 98 C.J.S. Witnesses § 507b, the contrary has also been held and is cited. The offense of vagrancy by prostitution apparently refers to a city or town ordinance, as there is no state offense so characterized.

their baby-sitter had stolen their missing property found in her possession. This was more than suspicion; it was evidence of larceny, at the most, and possession of stolen property, at the least. The proffered testimony was sufficient to have made a prima facie case of larceny, and to support a jury verdict. *Holcombe* v. *State,* 217 Ark. 407, 230 S.W. 2d 487; *Lee* v. *State,* 200 Ark. 964, 141 S.W. 2d 842; *Lee* v. *State,* 200 Ark. 1189, 141 S.W. 2d 845; *Holland* v. *State,* 198 Ark. 933, 132 S.W. 2d 190; *Riley* v. *State,* 184 Ark. 227, 42 S.W. 2d 15; *Dennis* v. *State,* 169 Ark. 505, 275 S.W. 739; *McDonald* v. *State,* 165 Ark. 411, 264 S.W. 961; *Wiley* v. *State,* 92 Ark. 586, 124 S.W. 249.

That evidences of offenses or acts similar to the one charged may be competent for the purpose of showing knowledge, intent or design is as thoroughly established as the general proposition that other crimes or offenses cannot be shown in evidence against a defendant charged with a particular crime, because it is not proof of other crimes, but evidence of other acts which are from their nature competent as showing knowledge, intent or design. *State* v. *Dulaney,* 87 Ark. 17, 112 S.W. 158. There we approved the principle that evidence of other crimes is competent to prove the specific crime charged when it tends to establish, inter alia, intent, a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others, or the identity of the person charged with the commission of the crime on trial. We also spoke approvingly of the idea that one facet of common plan or scheme is the commission of two or more crimes by the same person in pursuance of a single design, i.e., a system between the offense on trial and the one sought to be introduced, a connection as parts of a general and composite plan or scheme, or offenses so related to each other as to show a common motive or intent running through both. We accepted the exception to the rule against evidence of a collateral crime, when it is so linked to the crime under trial as to show that it is part of the same scheme or understanding or in some way has a logical connection with the crime charged.

In *Nash* v. *State,* 120 Ark. 157, 179 S.W. 159, we held that testimony concerning two other robberies was clearly

competent, saying that such proof is not to be excluded if it tends, in a material way, to prove guilt of the crime charged. We later said that such evidence was admissible to establish a defendant's guilt of the crime charged, or some essential ingredient thereof, when it discloses criminal intent or guilty knowledge, identifies the defendant, or is part of a common scheme or plan embracing two or more crimes so related to each other that the proof of one tends to establish the other. In *Cain* v. *State,* 149 Ark. 616, 233 S.W. 779, the evidence showed that one charged with operating a gambling house had discharged an employee who was running a crooked game in the basement of the Pastime place and that he was interested in running gaming houses at other places in the city as tending to show that he was operating a gaming house in the Pastime place, and that he had knowledge of it.

We have also held that a check not related to the charge of possession of forged and counterfeit instruments was properly offered by the State to show criminal intent, design or part of a common scheme or plan of the defendants. *Keese and Pilgreen* v. *State,* 223 Ark. 261, 265 S.W. 2d 542. We repeated that evidence of the commission of other crimes of a similar nature about the same time tends to show guilt of the accused when it discloses a criminal intent or guilty knowledge. Soon thereafter, we reviewed various holdings on the subject and restated our position on admissibility of evidence of other offenses. We said that evidence of other conduct on the part of the accused was admissible, with a proper cautionary instruction by the court, if relevant to prove some material point in issue, as when it sheds light on the defendant's intent. *Alford* v. *State,* 233 Ark. 330, 266 S.W. 2d 804.

More recently we sustained a trial court's permitting proof of attempts to defraud by the "green money press racket" other than the one charged as tending to show the defendant's identity, scheme, purpose, intent, design and motive. *Kurck* v. *State,* 242 Ark. 742, 415 S.W. 2d 61. Still more recently, in a rape case, we held that evidence of a similar approach to an attempt to commit rape was relevant as tending to prove a material point in issue, such

as mode or methods of operation, habits and practices of the defendant and to identify him as the person who committed the crime charged. *Tarkington v. State,* 250 Ark. 972, 469 S.W. 2d 93. We noted that testimony of prior acts was admissible where the modus operandi tended to establish identity, and that if the crime has been committed in a particular manner, and the identity of the perpetrator is in issue and not otherwise conclusively established, evidence of defendant's commission of a similar offense in such manner is admissible when the similarity of the manner employed logically operates to set the offense apart from other crimes of the same general variety and tends to suggest that the perpetrator of one was the perpetrator of the other.

I think that the proffered testimony was admissible as tending to show appellant's guilty knowledge, intent, motive, design, identity, her common plan, scheme, design, or system, and method of operation.

While the admissibility of the testimony is not essential to the sustaining of the trial court's action with reference to the jury argument, it certainly strengthens my position. In any event, the prosecuting attorney's statements in closing argument were clearly invited.

Appellant's attorney's statement challenged the state to answer the very strong implication that appellant, on many occasions, had the same opportunity to steal under circumstances similar to those outlined by the evidence. The prosecuting attorney had attempted to prove that appellant had availed herself of this very opportunity on other occasions. Actually, the remarks tended, at that stage of the proceedings to put the character of the defendant in issue. In any event, any jury hearing this argument would be alert to hear what response the prosecuting attorney could make to the argument, and the very response he made should have been anticipated.

In *Rose v. State,* 122 Ark. 509, 184 S.W. 60, we held that an improper argument cannot be complained of if it necessitated by what was said in an argument of an adversary. In that case, involving a charge of criminal abuse, defense counsel stated that there was no evidence to show how the manager of the Orphan's Home learned that the victim had been mistreated by the Roses, or why he sent

for her and had her examined, or where the information had been obtained. The prosecuting attorney responded that the state, in effect, had evidence to show all these facts but that defendant had objected to the introduction of the evidence and thus closed the mouth of the state and prevented it from proving these facts. We held that the prosecuting attorney's response was provoked, and that the error was invited and not reversible. It would be hard to find a closer parallel to the present case. See also, *Pink* v. *State,* 175 Ark. 396, 299 S.W. 391.

We have long recognized that a prosecuting attorney has a duty to see that trials are fair and impartial and that the innocent are protected from a conviction based on prejudice and caprice. See *Holder* v. *State,* 58 Ark. 473, 25 S.W. 279; *Adams* v. *State,* 176 Ark. 916, 5 S.W. 2d 946. The great emphasis which has recently been placed upon the importance of this responsibility of the prosecuting attorney as a minister of justice has tended to overshadow his duty to serve as the state's (and society's) only advocate in the courtroom, particularly in a closing argument to the jury. He cannot be expected to shirk his role as a zealous, vigorous and earnest advocate and not use every legitimate means to bring about a just conviction. See 23A C.J. S. 78, Criminal Law, § 1081; *Homan* v. *United States,* 279 F. 2d 767 (8th Cir. 1960), cert. denied, 364 U.S. 866, 81 S. Ct. 110, 5 L. Ed. 2d 88; *Henderson* v. *U.S.,* 218 F. 2d 14 (6th Cir. 1955), 50 A.L.R. 2d 754, cert. denied, 349 U.S. 920, 99 L. Ed. 1253, 75 S. Ct. 660, reh. denied, 349 U.S. 969, 75 S. Ct. 879, 99 L. Ed. 1290. The champion of the people of this state should not be conducted into the arena with arms bound and without proper weapons.

If, indeed, there was error, I submit that any such error was adequately cured by the careful action of the trial court, which we have found to be an adequate prophylaxis in similar circumstances many times. *Freeman* v. *State,* 214 Ark. 359, 216 S.W. 2d 864; *Cabe* v. *State,* 182 Ark. 49, 30 S.W. 2d 855; *Seaton* v. *State,* 151 Ark. 240, 235 S.W. 794; *Hicks* v. *State,* 193 Ark. 46, 97 S.W. 2d 900; *Blanton* v. *State,* 249 Ark. 181, 458 S.W. 2d 373; *McMillan* v. *State,* 229 Ark. 249, 314 S.W. 2d 183; *Tillman* v. *State,* 228 Ark. 433, 307 S.W. 2d 886; *Morton* v. *State,* 207 Ark. 704, 182 S.W. 2d 675; *Pratt* v. *State,* 75 Ark. 350, 87 S.W. 651.