BREWER *v.* STATE.

Opinion delivered December 23, 1918.

1. CRIMINAL LAW—REVIEW—GRAND JURY—PRESUMPTIONS.—In a prosecution for robbery, where the record on appeal fails to show the appointment and selection of grand jury commissioners and delivery of grand jury list to the judge, as provided by Kirby's Dig., §§ 4500, 4506, 4507, it will be presumed, in the absence of a contrary showing, that the statute was complied with in the organization of the grand jury.

2. CRIMINAL LAW—REVIEW—NECESSITY OF BILL OF EXCEPTIONS.—Any irregularity in the appointment or selection of the grand jury or in the delivery of the grand jury list, relied on as ground for setting aside an indictment, cannot be reviewed on appeal, in the absence of a bill of exceptions or other mode of showing a noncompliance with the statute.

3. GRAND JURY—MODE OF SELECTION.—A grand jury may be selected either in the mode designated by Kirby's Dig., § 4500 *et seq.*, or under the court's constitutional power to select a grand jury.

4. CRIMINAL LAW—CORROBORATION OF ACCOMPLICE.—Under Kirby's Dig., § 2384, evidence relied upon to corroborate an accomplice must, independently and without aid of the accomplice's testimony, tend to connect defendant with the commission of the crime, though it need not in itself be sufficient to support a conviction.

5. CRIMINAL LAW—TESTIMONY OF ACCOMPLICE—CORROBORATION.—In a prosecution for robbery, evidence held to corroborate the testimony of an accomplice.

Appeal from Woodruff Circuit Court, Southern Division; *J. M. Jackson,* Judge; affirmed.

*Culbert L. Pearce, Harry M. Woods* and *Ira J. Mack,* for appellant.

1. It is clear that the statutes regulating the selection of the grand jury were not complied with. If these statutes are mandatory, the case should be reversed with directions to quash the indictment. Kirby & Castle's Dig., § 2362, 5227, 5233, 5234, 5246, 5247; 60 Ark. 589; 75 W. Va. 7; 89 Miss. 147; 10 Am. Cases, 963-967; 17 Am. & Eng. Enc. of L. (2 ed.), 1262. No *cause* is shown by the records or testimony why commissioners were not appointed, etc., and *no orders were made and entered of record* declaring any necessity for selecting a grand jury other than from a list furnished by jury commissioners and directing the sheriff to act, hence the State cannot rely on the power granted in Section 5253, Kirby & Castle's Digest.

If the statutes are directory merely, the case should still be reversed with directions to quash the indictment, if the appellant's rights were prejudiced by the illegal empanelment of the grand jury. That he was so prejudiced appears from the fact that the sheriff was unusually active in the prosecution.

2. The evidence does not sustain the verdict of conviction. Crews' testimony seeking to implicate appellant is inconsistent and not in the least credible. Moreover there is no corroboration. Kirby & Castle's Dig. § 2554. The testimony of the two witnesses is too indefinite and

uncertain on the point of identification to amount to corroboration.  75 Ark. 540; 120 Ark. 148; 63 Ark. 310.

*John D. Arbuckle,* Attorney General, and *T. W. Campbell,* Assistant, for appellee.

1.  The negative certificate of the clerk touching his failure to find any orders of record relating to the appointment. of jury commissioners, etc., is not a proper part of the record, and is of no value.  The order appearing in the transcript showing that the grand jurors were summoned by the sheriff is all that it is proper to consider with reference to the manner in which the grand jury were selected, and this order raises the presumption that the sheriff in summoning the grand jurors, did so in conformity with and obedience to the law.  Kirby's Dig. § 4515; 12 R. C. L. 1026 § 13; 61 O. St. 444; 88 Va. 900.

If it be conceded that no jury commissioners were appointed, and that the grand jurors were not summoned from a list prepared by such commissioners, still that would be no ground for reversal.  The statute is directory merely.  Moreover it is not the function of a grand jury to try cases but merely to accuse.  10 Am. Ann. Cases, 964, note; 17 Nev. 272; 94 N. C. 1021; 12 Tex. 252; 12 Wash. 288; 23 R. I. 41; 130 Ia. 19; 16 Ark. 37; 21 Ark. 198; 60 Ark. 587.  A judgment of conviction can be reversed only "for errors of law to the defendant's prejudice appearing upon the record."  Kirby's Dig. § 2605.

2.  The evidence is sufficient to sustain the verdict. The amount of corroboration, if there be any substantive corroboration whatever, is a question for the jury alone. 115 Ark. 480.

HART, J.  Trigger Brewer was tried before a jury and convicted of the crime of accessory before the fact of robbery and from the judgment of conviction has duly prosecuted an appeal to the court.

His first assignment of error is that the judgment should be reversed because the court refused to quash the indictment against him. Section 2279 of Kirby's Digest provides in substance that a motion to set aside the indict-

ment can be made for substantial error in the summoning or formation of the grand jury. Under this section, the defendant moved to quash the indictment on the following grounds:

"That the grand jury which found the indictment herein was illegally chosen and constituted in that said grand jurors were not selected by commissioners appointed by the Woodruff Circuit Court for the Southern District; and further, that said jurors were chosen and selected by the sheriff of Woodruff County without any order from the circuit court for the Southern District of Woodruff County."

The record contains an order with reference to the formation of the grand jury as follows:

"On this day comes J. A. Diffey, J. W. Hill, Alex Slane, O. L. Crafford, J. R. Boon, W. L. Freeman, C. V. Caples, T. H. Legg, W. G. Jones, Lee Collier, Monroe Ellam, T. H. Hickman, Milton Marsh, J. E. B. McBurnett, Walter Robertson and G. W. Merrill. Twelve electors of the Southern District of Woodruff County, who are summoned by the sheriff of Woodruff County, to serve as grand jurors at the March term of this court, who are empaneled by the clerk, and who are by the court instructed as to their duties and demeanors, and J. A. Diffey is by the court appointed foreman hereof, and are given in charge of all the penal laws of the State of Arkansas, and who retire from the court room in charge of Jesse Spears, grand jury bailiff."

The record also contains the following certificate of the circuit clerk:

"I have examined all of the circuit court records in my office and fail to find any orders of record relating to the appointment of jury commissioners to select grand and petit jurors for the term of said court which convened in March, 1918, and at which time an indictment in the above cause of action was returned against the defendant, neither do I find that any list of grand jurors and alternate grand jurors were made and filed in open court by a jury commission, and the only order of record relating

to the organization of said grand jury is fully set out at page 1 of said transcript, said order having been made and entered of record on the 5th day of March, 1918."

It is claimed by the counsel for the defendant that this state of the record affirmatively shows that the grand jury was not formed in the manner prescribed by law and that the court should have sustained his motion to set aside the indictment. The particular defect pointed out is that it does not appear that the circuit court appointed three jury commissioners as required by Section 4500 of Kirby's Digest and that the grand jurors were not selected by the jury commissioners as prescribed by Section 4506 of Kirby's Digest and that the list of grand jurors was not delivered to the judge in open court as provided by Section 4507 of Kirby's Digest. We do not agree with counsel in their contention. The usual *prima facie* presumption in favor of legal proceedings must be indulged in that the grand jury was legally organized. It is presumed that the circuit court appointed three jury commissioners as required by law and that they selected the grand jury from the electors of the county as prescribed by statute and delivered the list of grand jurors sealed up to the judge in open court. *Bates* v. *State,* 60 Ark. 450; *Wallis* v. *State,* 45 Ark. 611, and *Larillian, Admr.* v. *Lane & Co.,* 8 Ark. 372.

It is true that the record in the present case does not contain the orders of the court showing these facts, but as we have just seen the presumption is that the grand jury was organized in accordance with the requirements of law unless the contrary shall be made to appear affirmatively by the record. It may have been in the present case that the docket of the circuit judge showed that he had appointed jury commissioners and that he had selected the grand jury in the manner prescribed by the statute, but that these orders had not been entered of record. Even if it be assumed that the requirements of the statute with regard to the organization of the grand jury are mandatory, before we could review the action of the court in refusing to set aside the indictment, it should

have been made to appear from the record by bill of exceptions or in some other mode provided by law that there had not been a substantial compliance with the statute in the formation of the grand jury.

Moreover, under our system, there are two modes by which a grand jury may be lawfully selected. One is where they are selected pursuant to the provisions of the statute; and the other is where the circuit court causes them to be selected in the exercise of its inherent constitutional right. *Wilburn* v. *State,* 21 Ark. 198, and *Straughan* v. *State,* 16 Ark. 37. Hence, indulging the presumption that the grand jury was legally organized, for aught that appears to the contrary from the record, it may be that the circuit court neglected to appoint jury commissioners and to have the grand jury selected as prescribed by statute and on that account exercised its inherent constitutional power to select a grand jury. The certificate of the circuit clerk is negative in character and does not affirmatively show that the grand jury was not formed in one of the modes prescribed by law.

It is next earnestly insisted that the evidence does not warrant the verdict. According to the testimony of the cashier of the bank, he was in the bank by himself early on the morning of the 8th of January, 1918. About nine o'clock in the morning, a man whom he now recognizes as Ben Crews came into the bank and with a drawn gun demanded the money of the bank. After arguing with Crews a little, the cashier went into the vault of the bank and showed him where the currency was. Crews did not take any silver, but took $3,400 in currency from the bank. He then walked out of the bank while covering the cashier with his gun.

Cotton Plant is in the Southern District of Woodruff County.

Ben Crews confessed his guilt and testified for the State. According to his testimony he was twenty years of age and got acquainted with the defendant, Trigger Brewer and Dodd Blackstone, at Kensett, in White County, Arkansas. They proposed to him that he should

go with them to Cotton Plant for the purpose of robbing the bank there. It was at first understood between them that he was not to take any active part in the robbery, but was only to wait at the edge of town and take the money after the others had robbed the bank and make way with it for them. He went to Cotton Plant on the night of the 7th of January, 1918, and met Brewer and Blackstone there. They all went into the woods near town and spent the night there. The next morning Crews was persuaded to go into the bank and hold up the cashier. The bank was situated next to the hotel and Brewer told Crews to take his seat on the porch of the hotel and that he would walk by the hotel and give him a signal when it was time to go in and rob the bank. About nine o'clock in the morning Brewer walked by the hotel and gave the signal to Crews and Crews went into the bank and held up the cashier and robbed it, taking therefrom $3,400 in currency which he divided between himself and Brewer and Blackstone. The part of the money kept by Crews was found on him when he was arrested the next day after the robbery.

J. A. Williams testified that he was section foreman and lived at Cotton Plant; that on the morning of the robbery he passed two men on the streets of Cotton Plant and that one of them told him as they passed him that the bank at Brinkley had been robbed that morning; that he did not know the men at the time, but thinks that the defendant, Brewer, was one of them; that one of them had a scar on his face similar to the scar on the face of Brewer and that he otherwise resembled Brewer.

John Matthews testified that he worked out a mile from Cotton Plant at the time the robbery was committed, and that as he went to his work between six and six-thirty o'clock on the morning of the robbery that he had occasion to pass along the sidewalk in front of the bank; that he noticed a man cross the street and come over on the sidewalk in front of the bank; that he did not know the man at the time but now recognizes the defendant as being the man that he saw walk across the street to the bank on the morning of the robbery.

The defendant did not testify in his own behalf but introduced several witnesses who testified that he left White County on the night of the 7th and went to Stuttgart, Arkansas, and was there on the morning of the 8th of January, 1918, the time when the bank was robbed.

It appears from the above testimony that the Bank of Cotton Plant was robbed on the morning of the 8th of January, 1918, and that Ben Crews was the person who robbed it. Crews was an accomplice and it is earnestly insisted by counsel for the defendant that his testimony was not sufficiently corroborated as required by statute and that for this reason the evidence did not warrant the verdict. They rely on section 2384 of Kirby's Digest. Under this statute, the court has uniformly held that the evidence relied upon for corroboration must, independently and without aid of the testimony of the accomplice, tend to connect the defendant with the commission of the crime. It is not, however, necessary that the corroborating evidence should be sufficient in itself, to support a conviction. It is only necessary that it tends to connect the accused with the commission of the crime.

In *Earnest* v. *State,* 120 Ark. 148, it was held that the corroborating testimony was not sufficient. In that case the station agent on the night of the burglary testified that he saw the defendant pass the railroad station twice, between nine and ten o'clock and the testimony of other witnesses showed that the burglary was committed between one and two o'clock the same night. Britt, the station agent, testified that there was nothing unusual in seeing the defendant walk by the station towards the section house and return shortly afterwards. Here the facts are essentially different. The record shows that Brewer did not live in the town of Cotton Plant and it is fairly inferable that he had no business there. Cotton Plant is a small town and the robbery occurred on the 8th day of January, 1918. Between six and six-thirty in the morning, which was very early for the time of the year, Brewer was seen to cross the street to the sidewalk in front of the bank. In a short time after the robbery

on the same morning another witness said that two persons passed him and said that the bank had just been robbed at Brinkley and that he thought that one of these persons was the defendant. No effort was made by the defendant to explain his presence in the town of Cotton Plant on that morning. No explanation was given why he was in front of the bank so early in the morning. On the contrary he had several witnesses who had testified that he was in another town on that morning. Then, too, the evidence shows that the defendant, Brewer and Blackstone and Crews worked together at a mill near Kensett, Arkansas, and it appears from the testimony of the witnesses for the defendant that he and Blackstone left there on the night of the 7th of January, 1918, the same night that Crews left for Cotton Plant.

The jury believed the witnesses for the State and the unusual circumstance of his being in front of the bank in a strange town so early in the morning unexplained, when considered in connection with their former associations with Brewer, and the further fact that just after the robbery he or a companion told a stranger that the bank at Brinkley had been robbed were facts of such unusual occurrence that they were sufficient to corroborate the testimony of Crews. *Celender* v. *State,* 86 Ark. 23.

It follows that the judgment must be affirmed.