CASTEEL *v.* STATE.

Opinion delivered December 12, 1921.

1.  CRIMINAL LAW—CORROBORATION OF ACCOMPLICE.—It was proper to charge the jury that defendant could not be convicted upon the testimony of an accomplice unless the same was corroborated by other testimony tending to connect defendant with the commission of the crime charged against him, and that the corroboration was not sufficient if it merely showed that the offense was committed and the circumstances thereof.

2.  CRIMINAL LAW—SUFFICIENCY OF CORROBORATION OF ACCOMPLICE.—
    Evidence *held* to corroborate sufficiently the testimony of an ac-
    complice to the effect that defendant had been engaged in the
    unlawful manufacture of intoxicating liquors.

3.  INTOXICATING LIQUORS—EVIDENCE OF MANUFACTURING.—On trial
    of a charge of manufacturing intoxicating liquors, it was admis-
    sible to prove that whiskey was found in defendant's possession,
    and that he was convicted of transporting liquor after the indict-
    ment herein was returned, where the court told the jury that
    they could consider such testimony only as tending to show
    that defendant was engaged in the business of illegally manu-
    facturing intoxicating liquors.

Appeal from Cross Circuit Court; *R. E. L. Johnson,*
Judge; affirmed.

*Killough, Lines & Killough,* for appellant. .

Defendants' motion for new trial should have been
granted for the reason that there is no corroboration of
the testimony of the accomplice, Termis Butts. 208 S. W.
197. Testimony of an accomplice must be corroborated
by other evidence. C. & M. Dig., § 3181; 120 Ark. 148.
The evidence relied on to corroborate an accomplice must,
independently and without aid of the accomplice's testi-
mony, tend to connect defendant with the commission of
the crime. 137 Ark. 243; 1 R. C. L. 169.

The court erred in admitting evidence of crimes com-
mitted by the defendant subsequent to the time of the
indictment, to-wit, the transporting of liquor, a misde-
meanor, which occurred seven months or more after the
indictment. The fact that a man was engaged in trans-
porting liquor could in no way tend to prove that he
also manufactured same, and the admission of such evi-
dence was highly prejudicial. While the court has in
numerous cases (131 Ark. 445; 136 Ark. 284; *Id.* 372;
*Id.* 562) sustained the admissibility of evidence of subse-
quent offenses to show a general plan or scheme, the evi-
dence here admitted cannot be likened to that in the above
cases. There is no logical connection between the two
from which it can be said that the one tends to establish
the other, and the admitted evidence was prejudicial. 8

R. C. L. 206. Testimony of a person's guilt or participation in the commission of a crime or felony, wholly unconnected from that for which he is on trial, cannot, as a general rule, be admitted. 2 Ark. 229; 216 S. W. 497.

The court erred in overruling the demurrer to the evidence and motion for instructed verdict.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *W. T. Hammock,* Assistants.

The testimony of the accomplice Termis Butts was fully corroborated by others and also by the appellant himself.

The courts will take judicial knowledge that "whiskey" is intoxicating. 37 Ark. 219; 15 R. C. L. Sec. 59, p. 1132.

The accomplice need not be corroborated in every part of his testimony. 1 R. C. L. 168; 115 Ark. 480.

The testimony of the witnesses Stafford and Hamilton tending to show that appellant committed like crimes, was competent to show, as a circumstance, that appellant had been engaged in operating a still and manufacturing intoxicating liquors, as alleged in the indictment and as testified to by Termis Butts. 131 Ark. 450; case note 18 A. and E. Ann. Cas. pp. 850 and 851; 97 S. W. 92; 45 Md. 33; 108 N. W. 6; 8 R. C. L. Sec. 198, p. 204.

WOOD, J. This appeal is from a judgment of conviction on an indictment charging that the appellant "on the 15th day of October, 1920, did unlawfully and feloniously manufacture, and was unlawfully and feloniously interested in the manufacture of alcoholic, vinous, malt, spirituous and fermented liquors and a compound or preparation thereof commonly called tonics, bitters or medicated liquors, etc."

Termis Butts testified for the State substantially as follows: He lived with Casteel for two years. He saw Casteel making whiskey on the place he was living on and assisted him. He had a still, and the boiler was about thirty gallons, made of copper or brass, with coils

into a barrel and out of the bottom. Witness saw the liquor after it was made. It was white and tasted like liquor. Appellant came out and took the liquor away after it was made. Witness saw liquor made out there last about January or February of this year (1921). It started in September or October, 1920. Arthur Clark had another still out there, but witness was not helping him. Clark is Casteel's step-son, and the other still was just a little way from the one that belonged to Casteel.

Epperson testified that he lived on Casteel's place. Casteel was joking witness and said: "Epperson, you are crazy about going to church and such things. It would be more fun to have a dancing hall and still here." Casteel didn't say anything about making liquor out there. Witness never saw him with any liquor out there but saw a little wine. Casteel built a little house between his house and witness' and said it would be a good place for a saloon or dance-hall. Witness didn't tell the grand jury that Casteel made liquor and that he threatened anybody that turned him up. The grand jury asked witness about that wine, and witness said, "It was not liquor—it was red stuff." And they asked if he sold any of it, and witness said, "He did not." Casteel was joking when he spoke of the crap games and the dance-hall.

Howard Hamilton testified that he was mayor of the city of Wynne sometime ago and is deputy sheriff now. Sometime ago he saw a car of Casteel's with liquor in the car and him standing by it. He was not in the car, and there were about four quarts of liquor, and he had none in his possession at that time. Witness found some at his home about three-quarters of a mile west of Wynne—about one gallon in a glass jar. It was white mule; it was white in color; it was hidden about thirty feet from his house in some weeds. The time witness spoke of was since the tenth day of February, 1921. There was no fence up around where witness found the liquor. Witness drove the car in. This

liquor was out in the weeds back of his house. Casteel was not there. It was night time. Witness didn't know who made the liquor or where it came from, and didn't know anything about Casteel making any liquor. Mrs. Casteel and her mother were at the place where witness found the liquor. Witness didn't know whether Casteel and his wife were living there or not—had not been seeing him there.

Witness Stafford testified that he was deputy sheriff; that Casteel lived about one mile west of town in May of this year, 1921. Witness made a search of his premises in May with Hamilton; found a gallon of white mule at the edge of the lot in some weeds. At that time witness saw Casteel with some liquor out on the hill and arrested him. Witness never saw a still in the possession of Casteel. He had one that he had torn up which he showed to witness on Tuesday or Wednesday after he was arrested on Saturday night. Witness had a conversation with Casteel after his arrest as follows: "I told him I looked at his mother's for a still and didn't find any still or liquor, and he said that I wouldn't find any still—that he had done torn it up." He (Casteel) made a reply before any promise of clemency. He was out on bond at the time he made the statement about having torn the still up, and the statement was voluntary. The conversation detailed was sometime in May of this year 1921. Casteel lives about three miles from his mother. Witness didn't know who the stuff belonged to, and Casteel didn't tell witness that the still was his, or that he had anything to do with it. Witness didn't know whether it belonged to Casteel's mother or brother. There was never any charge brought against Casteel about that still. The liquor mentioned was found where Luther Casteel was living. Luther Casteel told witness it belonged to his mother.

Charlie Smith testified on behalf of the defendant that in going to Wittsburg last fall he went by a toe path which is about a half mile from the public road. He found a little still over there by the smoke it made.

It was 25 or 30 yards from the path. Witness found Jim Garrett and Termis Butts there. "They were messing around with that still." Witness came and told Casteel about it the same day. The still was on Casteel's place. "I went with him and showed him where the still was. That still did not go on and continue to do business but was gone right now." Witness did not know where it went. Witness had never drunk any of that white mule out there, and had never bought any liquor from Casteel. Garrett disappeared.

It is unnecessary to set forth in detail any other testimony of the witnesses for the appellant. It tends to show that Jim Garrett and Termis Butts were seen at the still on appellant's place, and that Garrett tried to make arrangements with others to move a still on their land in May or June of last year; that appellant was not seen by any of the witnesses at the still.

The testimony of the appellant himself tends to show that when he was informed by Epperson that there was a still on his lands he went with Smith, who showed him where the still was, and found Garrett and Butts there and told them to get the still off. He was out there two or three days later, and it was gone. He never had anything to do with manufacturing liquor and didn't know how long the still had been out there. The still was on his wife's farm. Appellant had nothing to do with the manufacture of the liquor that Howard Hamilton found in his car; that was three or four months after the indictment was found. Appellant did not know who manufactured that liquor. "The still," says he, "which Mr. Stafford spoke of my tearing up and throwing away was no still, but some cheap copper. It was not mine. I had no connection with anything that was up there at my brother-in-law's."

The court instructed the jury that the witness, Termis Butts, was an accomplice, and that appellant could not be convicted upon his testimony unless the same was corroborated by other testimony tending to connect ap-

pellant with the commission of the crime charged against him, and that the corroboration was not sufficient if it merely showed that the offense was committed and the circumstances thereof, and that unless the jury were convinced beyond a reasonable doubt that the testimony of Butts was so corroborated they should find the appellant not guilty. In the above instruction the court correctly declared the law applicable to the testimony of an accomplice. Sec. 3181, C. & M. Digest; *Earnest* v. *State,* 120 Ark. 148; *Brewer* v. *State,* 137 Ark. 243.

Counsel for appellant do not question the law as thus announced but contend that under the law thus declared by the court there was no testimony to corroborate the accomplice, and that therefore the testimony was not sufficient to sustain the verdict. We do not concur with learned counsel in this view.

The testimony speaks for itself, and it is unnecessary to discuss it in detail. It suffices to say that it was sufficient to justify the court in submitting the issue to the jury, and to warrant the jury in finding that the testimony of the accomplice was corroborated by other witnesses. In other words, the testimony of the other witnesses, independently and without the aid of the testimony of the accomplice, tended to connect the appellant with the commission of the crime and was therefore sufficient corroboration of the testimony of the accomplice, and tended to prove that the appellant was guilty of the crime charged. See *Brewer* v. *State, supra; Kennedy* v. *State,* 115 Ark. 480.

The appellant next contends that the court erred in permitting the State to prove by the witnesses Stafford and Hamilton that whiskey was found in the possession of the appellant and that he was arrested and convicted of the offense of transporting intoxicating liquors after the indictment herein was returned on the 10th day of February, 1921. In passing upon the motion of the appellant to exclude such testimony, the trial court said: "The court holds that this evidence

goes to the jury for what it is worth and as a circumstance only to show what business he (appellant) might probably have been engaged in at the time of the filing of the indictment in this case and at the time alleged in the indictment in which he manufactured liquor illegally; and the jury is also told that they cannot consider this evidence in arriving at a conclusion of his guilt or innocence, but only as a circumstance to show what business he might have been engaged in at the time the indictment alleges he was engaged in; of the force and weight of the evidence the jury is the sole and exclusive judge.''

It thus appears that the court, in effect, told the jury that they could only consider the testimony of the above witnesses, to which objection was made, as tending to prove the character of business in which the appellant was engaged at the time of the commission of the alleged offense for which appellant was being tried, and as tending to show whether the intention of the appellant was to engage in the business of illegally manufacturing intoxicating liquors at the time alleged. The testimony was competent for such purpose and comes within the doctrine on that subject announced by this court in *Larkin* v. *State,* 131 Ark. 445-449, and *Lowry* v. *State,* 135 Ark. 163, and cases there cited. This testimony tended to prove that after the time of the commission of the alleged offense the appellant had in his possession a gallon of white liquor—white mule; that this liquor was concealed in the weeds thirty feet back of appellant's house. This fact, coupled with the testimony that after the appellant was arrested he stated that he had torn up the still, tended to show that appellant was in possession of a still, and that he was manufacturing a liquor called "white mule." There was testimony tending to prove that the white mule manufactured by the appellant was whiskey. This testimony tended to prove the crime with which the appellant was charged, and under the above authorities was therefore competent.

See also 8 R. C. L. p. 205-6, §§ 199, 200 and 201. We find no error in the rulings of the trial court. The judgment is therefore affirmed.