BENNETT AND HOLIMAN *v.* STATE.

4186 144 S. W. 2d 476

Opinion delivered November 4, 1940.

*Caudle & White* and *Neill Bohlinger,* for appellants.

*Jack Holt,* Attorney General, and *Jno. P. Streepey,* Assistant Attorney General, for appellee.

HOLT, J. Appellants, Dick Bennett and Edgar Holiman, together with John Carney and J. B. Walden, co-conspirators, were charged in an information with the

crime of arson. Carney and Walden entered pleas of guilty to the charge and one was sentenced to serve one year in the state penitentiary and the other two years.

Appellants, Bennett and Holiman, were tried and convicted, and the punishment of each was fixed by the court at five years in the state penitentiary.

The information upon which appellants were tried is as follows:

"I, Ralph W. Robinson, prosecuting attorney of the Fifteenth Judicial District of Arkansas, in the name and by authority of the state of Arkansas, and upon information and belief accuse Edgar Holiman, Dick Bennett, John Carney and J. B. Walden of the crime of arson as follows, to-wit:

"The said Edgar Holiman, Dick Bennett, John Carney and J. B. Walden in the county and state aforesaid, on the 5th day of March, 1940, did unlawfully, feloniously and maliciously conspire and agree and did wilfully and feloniously burn and destroy a drug store in the town of Paris, Arkansas, known as the Cochran Drug Store and the property of Edgar Holiman and L. B. Crenshaw, and others, and did burn the said building and its contents against the peace and dignity of the state of Arkansas, and it appearing that there are reasonable grounds for believing that said defendant had committed the offense alleged herein, I therefore pray a warrant from Maude Connelley, circuit clerk, for arrest of the defendant that he may be brought before said court in the said county to be dealt with according to law."

The information is based upon § 3045 of Pope's Digest as indicated by instruction No. 1 given by the court, which is as follows:

"This information is based on § 3045 of Pope's Digest, which reads: 'Every person who shall wilfully and maliciously burn, or aids or abets or assists or hath advised and encouraged in the burning of any dwelling house, or other house, although not herein specifically named, or any improvements upon real estate, the property of himself or another person, shall be deemed guilty

of arson as principal, and upon conviction therefor shall be imprisoned in the state penitentiary for a period of not less than one nor more than ten years'."

Appellants, Dick Bennett and Edgar Holiman, have appealed, assigning many errors in the course of the trial. They contend, first, that the court erred in refusing to grant them separate trials on their motion for a severance. We think, however, that this contention is without merit. Section 3976 of Pope's Digest provides: "When two or more defendants are jointly indicted for a capital offense, any defendant requiring it is entitled to a separate trial; when indicted for a felony less than capital, defendants may be tried jointly or separately, in the discretion of the trial court. When separate trials are ordered in any case, the 'defendants shall be tried in the order directed by the court."

This section of the statute has been construed by this court in three recent cases: *Graham and Seaman* v. *State,* 197 Ark. 50, 121 S. W. 2d 892; *Johnson* v. *State,* 197 Ark. 1016, 126 S. W. 2d 289; *Morris and France* v. *State,* 198 Ark. 1040, 132 S. W. 2d 785. In each of these cases a severance was denied by the trial court, and this court, on appeal, held that no error had been committed since it did not appear that the trial court had abused its discretion in denying the severance.

In *Johnson* v. *State, supra,* this court said: "We think there was no abuse of this discretion in the instant case in denying the right of severance, especially in view of the fact that the defendants were charged with having conspired and confederated together to violate the law, and it was, therefore, necessary and proper to show their joint participation in the acts constituting a violation of the law which the information charged."

In the instant case, however, appellants contend that the trial court abused its discretion in denying appellants separate trials for the reason that a purported confession of appellant, Holiman, was allowed to be introduced in evidence by the court, which was prejudicial to the rights of appellant, Bennett.

The trial court instructed the jury that while Holiman's confession could be used as evidence against him, it could not be used against Bennett. We quote the last sentence in instruction No. 7 as follows: "You will not consider the confession in any manner against the defendant, Bennett."

While Holiman's confession was made subsequent to the completion of the crime, and was not admissible against his co-defendant, Bennett, it was clearly admissible against Holiman, and the court having instructed the jury that the confession could not be used as evidence against Bennett, we think no error is shown.

In the recent case of *Lindsey* v. *State, ante* p. 87, 143 S. W. 2d 573, this court said:

"The confessions of Langley and Ralston were made after the completion of the criminal enterprise, and in the absence of appellant, and the law is definitely settled that, where a crime is committed, and the criminal enterprise of the conspirators has ended, the acts or declarations of one conspirator are thereafter inadmissible against his co-conspirators. *Hammond* v. *State,* 173 Ark. 674, 293 S. W. 714. But it must be remembered that the parties who made the confessions were also on trial, and the confessions were, of course, admissible against the parties who made them, and the jury was instructed that 'The confessions here can be considered only by you as evidence against the one who made it.'

"It is argued that the jury could not consider the confessions for any purpose without considering them against appellant. But this does not necessarily follow. The jury was told to do so, and we perceive no reason why they may not have done it. The jury might well have asked, in their deliberations, and have answered the question, whether, aside from the confessions, there was evidence of appellant's participation in the crime. This they were required under the instruction to do before finding appellant guilty, and we conclude there was no error in the instruction. *Johnson* v. *United States,* 82 Fed. 2d 500; *State of New Jersey* v. *Dolbow,* 117 N. J. L. 560, 189 Atl. 915, 109 A. L. R. 1488."

In *Commonwealth* v. *Millen,* 289 Mass. 441, 194 N. E. 463, the rule is announced as follows:

"This court has held that the question whether separate or joint trials shall be granted rests in sound judicial discretion. (Cases cited.) [This same rule obtains in Arkansas by virtue of our statute. Pope's Digest, § 3976.]. A finding of abuse of discretion cannot be based on the fact that a confession of the defendant, Faber, implicating these defendants would be introduced at the trial. The rule that it is discretionary with the judge whether defendants indicted jointly shall be tried together applies where it is known that a confession in writing made by one of the defendants implicating the others would probably be introduced at the trial. *Commonwealth* v. *Borasky,* 214 Mass. 313, 101 N. E. 377. . . .

"The defendants were not prejudiced by the introduction of the confession. (Cases cited.) The rights of the defendants were carefully guarded by the instructions given, which, it is to be assumed, were followed by the jury."

In the case of *People* v. *King,* 30 Cal. App. 185, 85 Pac. 2d 928, the court said:

"Error is claimed because of the refusal of the trial court to grant separate trials. Since the enactment of § 1098 of the Penal Code, in its present form [§ 1098 provides that defendants are to be tried jointly unless the judge in his discretion grants a severance], a defendant jointly charged is not entitled to a separate trial as a matter of right, and the question of severance rests entirely in the discretion of the trial court. *People* v. *Thomas,* 135 Cal. App. 654, 27 Pac. 2d 765. It is not an abuse of discretion to refuse to grant a motion for a severance because damaging testimony or the admission or confessions of a co-defendant might be admitted in evidence against such co-defendant, and not be admissible against the moving defendant. *People* v. *Swoape,* 75 Cal. App. 404, 242 P. 1067; *People* v. *Tinnin,* 136 Cal. App. 301, 28 Pac. 2d 951."

Appellants next contend that error was committed in the court's refusal to require the state to elect upon which charge in the information it would try appellants, it being their contention that more than one offense was charged, and, also, that error was committed in permitting the original information to be amended.

It appears that before the introduction of the testimony appellants demurred to the information. As originally drafted, the information contained this recital: "did wrongfully and feloniously burn and destroy a drug store in the town of Paris, Arkansas, known as the Cochran Drug Store, and the property of Edgar Holiman and others." The prosecuting attorney was permitted to amend the information by writing in the name "L. B. Crenshaw" as it now appears in the information set out, *supra*. No error was committed in permitting this amendment. Section 3853 of Pope's Digest.

After this amendment, the court overruled appellants' demurrer. Whereupon they filed a motion to require the state to elect, which was also overruled.

We think it clear from the allegations contained in the information that Bennett and Holiman were charged with the arson of a drug store, the property of Holiman, and the building in which the business was carried on, belonging to L. B. Crenshaw. The charge is that appellants "did burn the said building and its contents." There was only one fire, and this fire destroyed Holiman's stock of goods housed in the building, and while the building belonging to Crenshaw was not destroyed, it was materially damaged by the fire. It is not necessary that the building, alleged to have been burned, should have been burned down. If it were damaged by the fire that would be sufficient to support a charge of arson.

In *Mary* v. *State*, 24 Ark. 45, 81 Am. Dec. 60, this court said: ". . . but it is not necessary that any part of the house should be wholly consumed, or that the fire should have any continuance; and the offense will be complete, though the fire be put out, or go out of itself."

There is no duplicity in this information. In discussing the duplicity of an arson indictment, the text-

writer in 4 American Jurisprudence, § 32, p. 101, says: ". . . In the case of arson, a single offense may be committed although several houses or articles are burned, provided only one fire is set. Consequently, an indictment for arson which charges as a single act the burning of several houses or which charges the burning a house as an incident to the burning of contents charges but one offense and is not bad for duplicity, . . ."

In *Clue* v. *State,* 78 Miss. 661, 29 So. 516, where a man was charged with burning a cotton house, the property of a certain man, and at the same time burned three bales of cotton stored therein, the cotton being the property of the owner of the cotton house and another party, upon a motion to elect being filed, the trial court disposed of the matter with this language: ". . . the charge is of one act at the same time, and we think the indictment valid. The house could not be burned without the cotton, nor the cotton without the house. It really charges the burning of the house, and as an incident, the cotton in it. . . ."

We conclude, therefore, that the court did not err in overruling the demurrer and in denying appellant's motion to elect.

Appellants' next contention is that the court erred in denying their motion to make the information more definite and certain. We think, however, that this contention is without merit, for the reason that the information charges the burning of the building and the contents known as the Cochran Drug Store, and is otherwise sufficiently definite in its allegations to put appellants on notice that they are charged with the crime of arson by burning the building and the drug store.

Appellants in their brief, however, argue here, and for the first time, that the motion to make more definite and certain should have been treated as a motion to compel the state to file a bill of particulars in accordance with the provisions of § 3851 of Pope's Digest. It is our view, however, that even if we treat appellants' motion as a request for a bill of particulars, the trial court did

not err in overruling the motion, for the reason that the information itself gave all of the details of the charge necessary for appellants to make their defense.

This court so held in the recent case of *Brockelhurst v. State,* 195 Ark. 67, 71, 111 S. W. 2d 527. It is there said:

"It is also argued that appellant was entitled to a bill of particulars in accordance with § 22 of said act 3. Said section amends § 3028 of Crawford & Moses' Digest by changing and making unnecessary certain contents of indictments and concludes by providing that: 'The state, upon request of the defendant, shall file a bill of particulars, setting out the act or acts upon which it relies for conviction.' It will be seen from the information filed, above quoted, that it set out in detail 'the act or acts' upon which the state relied for a conviction, and contained all the requirements of the former statute to make a good indictment had it been returned by a grand jury. So, appellant had a bill of particulars in the information on which he was tried, and it would have been a useless thing to require another. The court, therefore, properly denied this request."

Complaint is made because the trial court refused to modify instruction No. 12 by adding to the first paragraph therein the following: "And such corroborating evidence must be such as to be inconsistent with the defendant Bennett's plea of not guilty." We find, however, that this paragraph is in all essentials a copy of § 4017 of Pope's Digest. This court has many times approved instructions similar in form to this, one of our leading cases being that of *Casteel* v. *State,* 151 Ark. 69, 74, 235 S. W. 386. There it is said:

"The court instructed the jury that the witness, Termis Butts, was an accomplice, and that the appellant could not be convicted upon his testimony unless the same was corroborated by other testimony tending to connect appellant with the commission of the crime charged against him, and that the corroboration was not sufficient if it merely showed that the offense was committed and the circumstances thereof, and that unless

the jury were convinced beyond a reasonable doubt that the testimony of Butts was so corroborated they should find the appellant not guilty. In the above instruction the court correctly declared the law applicable to the testimony of an accomplice. Section 3181, C. & M. Digest; *Earnest* v. *State,* 120 Ark. 148, 179 S. W. 174; *Brewer* v. *State,* 137 Ark. 243, 208 S. W. 290.''

The last paragraph of instruction No. 12 told the jury that if they find the evidence of the accomplices corroborated by other evidence they must still believe from all the evidence in the case, and beyond a reasonable doubt, that the defendants are guilty. On the whole, we think the instruction as given was correct and no error was committed in denying appellants' modification.

Complaint is next made that the court erred in giving instruction No. 19. As this instruction appears in the transcript, ''Holiman'' is written in ink after the fourth word of the 12th line, and the words ''and in that event you will convict anyway'' [appearing in the 14th and 15th line on page 600 of the transcript] crossed out.

The trial judge signed the certificate to the bill of exceptions on the 10th day of July, 1940, as being correct. Both appellants contend here that this instruction was not given in its corrected form, as it appears in the transcript, and have attempted to bring into the record by certiorari what purports to be a copy of instruction No. 19 which they claim was given at the trial without the modifications, *supra.* Our statute provides that the bill of exceptions should be presented to the trial judge for his approval and § 1546 of Pope's Digest also provides that ''. . . if the writing is not true, the judge shall correct it, or suggest the correction to be made, and when corrected, sign it. . . .''

Section 1547 of Pope's Digest provides that ''if the party excepting is not satisfied with the correction, upon his procuring the signature of two bystanders attesting the truth of his exception as by him prepared, the same shall be filed as part of the record. . . .'' Provision is also made in this section for controverting

the bystanders' affidavits, and this court has held that if the bystanders' exceptions are not controverted they are to be taken as true in the Supreme Court even though they are in conflict with the bill of exceptions signed by the trial judge. *Perry* v. *State,* 188 Ark. 133, 64 S. W. 2d 328.

Here no attempt was made to secure a bystanders' bill of exceptions. We think it clear, therefore, that the bill of exceptions certified by the judge must be accepted as correct in this court and that instruction No. 19, as it appears in the transcript with the corrections, was the one given at the trial and when read in connection with all the other instructions given, was a proper instruction.

Finally it is urged by appellants that the evidence on the part of the state is not sufficient in that there is a failure "of competent testimony by which the testimony of the admitted accomplices was attempted to be corroborated."

The case before us presents one in which accomplices were allowed to testify, but under our statute (§ 4017, Pope's Digest) no person may be convicted on the uncorroborated testimony of an accomplice. This court has laid down a rule for the determination of this question. In the recent case of *Breed* v. *State,* 198 Ark. 1004, 132 S. W. 2d 386, an arson case, the court had for consideration the testimony which was attacked on the ground that the accomplices were not sufficiently corroborated. It is there said:

"The rule is that the evidence, independent of that of the accomplice, must tend to connect the defendant with the commission of the crime.

"It need not be such as considered wholly apart from the testimony of the accomplice, to warrant a conviction. The rule in this regard was rather clearly announced in a somewhat recent case. *Shaw* v. *State,* 194 Ark. 272, 108 S. W. 2d 497. It was there announced: 'It is sufficient to say that this was purely a question for the jury. They believed the testimony of Scott, and there is nothing in the evidence to show that it was physically impossible for the witness to have recognized the appel-

lants as he said he did. The testimony of Scott, independent of that of the accomplices, tended to connect the appellants with the commission of the crime, although it might not have been sufficient of itself to convict them. This satisfied the rule. The sufficiency of the corroborating evidence was a question for the jury and, together with the testimony of the accomplice, it is clearly sufficient to support the verdict.' "

We now proceed to set out, somewhat at length, the testimony as reflected by the record, which, we think, on the whole tends to corroborate that given by the accomplices and is ample to support the verdict of the jury in this case.

Holiman and Bennett were in need of money to meet payments due the Agricultural Production Association for money advanced to buy cattle and prepare them for market. Witness, L. E. Oats, testified that Bennett and Holiman wanted to go into the cattle business together, but Bennett had some old judgments pending against him so the loan had to be made to Holiman; that at the end of the first year after the loan was made Holiman was unable to go with him to inspect the cattle, so Bennett went with him. They found only 64 out of some supposed to be 130 head of cattle, and those that they did find were a hard looking lot.

John Carney, the first of the accomplices to testify, stated that he pleaded guilty to his part in the transaction. Bennett came to the pool room where he and his nephew, Holiman Cook, were and contacted him; that Bennett asked him to come over to his office; that Bennett offered to pay him $450, and told him what he wanted him to do. A week later he called Bennett in the afternoon and went to Bennett's house. He asked Bennett for morphine; that Bennett told him he would get it, and soon Holiman came with morphine and a hypo needle. He came back to town the following Tuesday night and contacted Holiman at the drug store. He (Carney) carried in paper and other stuff to burn and Holiman gave him a car, $2 in money and two five gallon cans. He went to Moffet, Oklahoma, to get the oil to burn the store. He

brought the oil back in the two cans [Carney identified the two cans shown him at the trial as the two cans he had used] and hid them in a little house where the trash was kept back of the store.

Carney further testified he got $27 in all from Holiman and some morphine. He went down several times to arrange excelsior to burn, and was there Wednesday night before the store burned on Monday night. Bennett came up to his home twice to see him before the fire. He got Solon Parker to 'phone Bennett. Bennett came each time to see him about burning the drug store. He told Bennett to tell the people at his home that he was trying to collect a claim against the Texas Company for an injury to a finger, but Bennett never made any effort to make any such collection. He went to Moffet, Oklahoma, in a black, 1934, V-8 Ford.

J. B. Walden, the second accomplice, testified that he was an electrician; that Dick Bennett contacted him about February 1 and wanted to know if he could fix a wire in a drug store so it would burn the building; that the conversation between him and Bennett occurred in a car in front of Walden's house, and Bennett offered him $250 to do the job; that Bennett asked him to go down and look it over at once. He did so in four or five days; called Bennett up and Bennett came out to his home at night. About the middle of February, Bennett came out to the mine where the witness worked. About March 1, Bennett took him to the drug store and on Friday night Bennett let him in with a key. He looked the drug store over and left in 15 or 20 minutes. Their car was parked at Freeman's Garage across the street. They saw a short, bald headed fellow without any hat standing there. Bennett suggested he contact Holiman Monday between 1 and 2 o'clock. He told Holiman he couldn't burn the drug store for the roof was tin, the walls concrete and plaster and the floor concrete. Holiman told him that the stock of fixtures had to be burned and that he had plenty of gasoline and oil in the little house behind the building with which to saturate it.

Walden further testified that he told Holiman he would put a "bug" in there and it would do the rest; that this was on Monday afternoon before the fire that night. He came back that night around 9:30 and Holiman let him in. Holiman distributed the gas, coal oil, paper, and excelsior around and saturated it with oil. He (Walden) furnished all the material for the "bug" but the clock and he got that from Bennett. He fixed the arrangement on the clock to go off at 15 minutes until 3 o'clock. Walden described in detail the contraption he had made to set the fire off, and then was permitted to exhibit to the jury a model of it. Walden set the "bug" and went on home. The next morning he heard about the fire. He saw Bennett, who came to his house within the next four or five days. Bennett there paid him $25. He saw Bennett four or five days after that and Bennett told him the fire marshal was there and it looked like Holiman would be arrested. Bennett promised to get the rest of the money from Holiman. A little after that the witness was arrested.

Mrs. J. B. Walden testified that Bennett came out to their home on February 5 or 6 and she asked him what he wanted with Walden and he said he had a $250 wiring job for him. Later Bennett contacted Walden and they talked in a parked car in front of the house. Bennett and Walden came out to the house between 3 and 4 o'clock on Monday before the fire that night. Walden came back about 7 p.m. that same night in Bennett's car and got some things out of his electrical tool box. Walden came home later in the night. A few days after the fire Bennett came out to the house to see Walden. On Saturday, March 9, Bennett came out and gave Walden $25 and Walden gave her $15 and kept $10 of it.

Horace Oliver, brother of Mrs. J. B. Walden, testified that he saw Bennett over at his sister's home and Bennett and Walden had a talk one night in a car in front of his sister's house; that he slipped up to the car in the dark and heard Bennett tell Walden "Doc has got everything fixed and if you will do the wiring we will give you $250."

Frank Batchelor testified that Walden and Bennett were at Deleware on the Monday the fire occurred that night.

Watt Houser testified he saw Bennett and another man come out of the drug store the night before the fire after the store had closed.

Mrs. John Daniels testified Walden called for Bennett over her telephone. Colonel Henry Stroupe testified the fire occurred at 3 o'clock in the morning. Harry Carney, a brother of John Carney, testified that Bennett called at his house for John Carney two or three times before the fire. Fay Featherston corroborates John Carney that he (Carney) called Bennett over Featherston's telephone. Solon Parker corroborates John Carney that he (Carney) called the Cochran Drug Store at Paris for Holiman. Watson McDonnell testified that he sold John Carney ten gallons of coal oil at Moffet, Oklahoma, sometime after January 15, around 9:30 p.m., and put it in two five-gallon containers like the ones exhibited to him at the trial.

Scott Breed testified he saw Holiman meet Carney at the back door of his drug store and heard him ask "How much, John?" and Carney answered "Twenty-five grains, the usual amount," then saw Holiman deliver a little package to him. Breed's mother corroborates this testimony and identifies Carney as the man to whom Holiman gave the package.

The question of the insanity of appellant Holiman at the time of the trial, and at the time of the commission of the crime, was submitted to the jury under proper instructions.

When we weigh all the testimony in its most favorable light to the state, as we must do (*Holland* v. *State*, 198 Ark. 933, 132 S. W. 2d 190), we think it substantial and sufficient to convict appellants.

No error appearing, the judgment is affirmed.