M. M. POWELL *v.* STATE OF ARKANSAS

5592                                              471 S.W. 2d 333

Opinion delivered September 27, 1971
[Rehearing denied November 1, 1971]

*Sam Sexton, Jr.,* for appellant.

*Ray Thornton,* Attorney General; *Milton R. Lueken,* Asst. Atty. Gen., for appellee.

CONLEY BYRD, Justice. Appellant M. M. Powell, for reversal of his grand larceny conviction, alleges:

"1. The Court erred in overruling defendant's demurrer to the information in that the information or Bill of Particulars contained no allegation of ownership of property allegedly stolen.

2. The prosecuting attorney denied to the defendant a fair trial by commenting on the defendant's not taking the stand.

3. The evidence is not sufficient to support the verdict."

The record shows that the information and bench warrant charging appellant with robbery were filed on December 19, 1969. On January 22, 1970, appellant filed a motion for Bill of Particulars and on the same date asked that his motion for Bill of Particulars be withdrawn, waived formal arraignment and entered a plea of not guilty. On January 29, 1970, the state filed a Bill of Particulars which, among other things, provided:

"1. The State of Arkansas contends that Richard Daniels was robbed both by force and intimidation. The State of Arkansas also contends that the lesser offense of Grand Larceny is included in the charge made against the Defendant herein, and the State of Arkansas requests permission and leave of the Court that the information filed herein be amended to state in the body thereof, as follows: The said Defendant, on the 19th day of December, 1969, did unlawfully and feloniously take, steal and carry away from Richard Daniels cash money in the amount of $22,-650.00, against the peace and dignity of the State of Arkansas."

The case was originally set for trial at 9:00 A. M. on February 16, 1970. At 8:50 A. M., appellant filed a petition in Federal Court, which delayed trial until Oct. 26, 1970, on which date he filed his "Demurrer-Exception and Second Motion to Quash Information." In that plea of abatement, appellant alleged, among other things:

"Comes, now, Marshall Mays Powell, Defendant, and files his second Motion to Quash the information and demurs and excepts to said information for the following reasons:

\* \* \*

"II. ... (3) It fails to allege the ownership of said monies to be then and there the corporeal personal property of the said Richard Daniels; nor ownership of that of any other person, the name or names of the owners of said money.

"(Thus, the attorneys for this case cannot properly interrogate and exercise challenges of the prospective jurors, who might have any affiliation with owners of said money.)

"(4) Said information (and /or Bill of Particulars if the Court should hold that this case is a prosecution thereon) does not set forth with particularity allegations sufficient to apprise this Defendant of the nature of the charge against him, and, as a part of this demurrer-exception and motion to quash, this Defendant here—now requests an amended Bill of Particulars so that he may properly prepare his defense. (27 Am. Jurisprudence) . . .

\* \* \*

"WHEREFORE, PREMISES CONSIDERED, Defendant prays that the Demurrer-Exception and Second Motion to Quash Information be in all things sustained, and that this prosecution be abated and dismissed from the docket of this Court."

The proof adduced by the State showed that Richard P. Daniels was a special investigator with the Alcohol, Tobacco and Firearms Division of the U. S. Treasury Department. In that capacity he was to purchase some stolen firearms allegedly transported in interstate commerce. Pursuant to some previous contacts he went to Mena, Arkansas, where he met Carl Wayne Matthews

and Peter Mavrikis at Abby's Cafe. On his person he had $23,000, part of which was his own funds, part was Federal funds and the remainder was furnished by the Arkansas State Police—the latter money having been handed to him by Marion Burton, the Executive Secretary to Governor Rockefeller. After Mavrikis decided that Daniels and his helper, Floyd Jones, were not federal agents, Matthews drove off in a blue and white '69 Oldsmobile toward Mena and returned with appellant. Daniels got into the Oldsmobile with Matthews and appellant. Appellant then told Daniels that they were ready to do business if Daniels had the money. At this point Daniels got the money from his automobile and returned to the Oldsmobile and got into the back seat. Appellant then indicated that he wanted Daniels to give the money to him. Appellant refused to get in the back seat with Daniels to count the money and at his insistence Daniels handed the money to appellant in the front seat. In so doing appellant told Daniels that he would count the money and hand it back. Appellant after counting the $23,000, handed $350 back to Daniels and began putting the remainder of the money into a canvas bag. When Daniels objected the car jerked and Matthews pushed Daniels back and held his hand under a newspaper in such way that Daniels thought he had a gun. About this time appellant pitched a locked canvas money bag back to Daniels and suggested that the deal was off. Daniels then jumped out of the car and asked Jones if he had a pocket knife. When Jones stated that he did not, Daniels told Jones to stay there while he went after a knife. At this time appellant and Matthews drove away. Inside Abby's Cafe, Daniels cut the bag open and determined that it contained only play money. He then notified the other officers by radio that appellant and Matthews had the money. Appellant was arrested about two miles away and the money was recovered.

S. Perry Penland, a Florida lawyer, testified to a prior transaction between him and appellant whereby appellant absconded with $140,000 through the use of a canvas bag under similar circumstances.

POINT I. We find no merit in appellant's contention that the trial court erred in overruling his demurrer to the information. As we read the Bill of Particulars, it alleges that appellant stole the money from the possession of Richard Daniels. The authorities generally support the proposition that ownership may be laid either in the real owner or in the person in whose possession the property was at the time of the theft. See *State v. Esmond,* 135 Ark. 168, 204 S. W. 210 (1918); *Cook v. State,* 80 Ark. 495, 97 S. W. 683 (1906), and 50 Am. Jur. 2d *Larceny* § 132. Thus the charge as made was sufficient against appellant's plea in abatement.

POINT II. One thrust of appellant's argument that the prosecution denied him a fair trial by commenting on his failure to take the witness stand arose during cross examination of Daniels in this manner:

"Q. (Cont'd. by Mr. Foreman) Did you personally investigate whether or not on the following Sunday afternoon and/or Monday morning, the exact list of guns that were read off into this record from your statement awhile ago were changed from one truck to another at Y-City?

MR. HARDEGREE: Your Honor, I object.

THE COURT: What is the purpose of it, please, Mr. Foreman?

MR. FOREMAN: To bear out the defense's statement to the jury that the guns were here, and were to be delivered, and that my client was simply a broker to watch the money and see that the owners of the guns got it.

MR. HARDEGREE: Now, your Honor, to which the State says that surely the defendant can testify in person and by personal knowledge.

THE COURT: If he has any personal knowledge

of this, I will let him so testify. I don't want him to testify to any hearsay.

MR. FOREMAN: May we adjourn for a record, Your Honor?

THE COURT: To do further than the record that has already been made?

MR. FOREMAN: Yes, sir, I ask that either the jury be retired, or that we retire with the court reporter.

THE COURT: If you desire, we will go in chambers. I feel I have ruled on it unless—

MR. FOREMAN: I know you have ruled on it. I just want to make a record on it. I'm not going to argue with the Court.

(At this point, the Court, counsel and the court reporter retired into chambers out of the hearing of the jury, and the following proceedings were had:)

IN CHAMBERS:

MR. FOREMAN: Comes the defendant, Marshall Mays Powell, and moves for a mistrial because of the conduct of the Prosecuting Attorney, Joe Hardegree, in commenting that the defendant could testify if he wanted to, . . ."

After a hearing in chambers on the motion for a mistrial the Court returned to the court room where the following occurred:

"THE COURT: Members of the jury, do any of you remember—and I will ask you to express yourself by a show of hands—do any of you remember an objection made by Mr. Hardegree and just what he said in that objection just prior to this recess? I assume that you did not. I think two or three of us may have been talk-

ing at once. I didn't understand it either, but if any such objection was made by Mr. Hardegree, and I am sure one was made. I remember he made an objection. I am asking you at this time to wholly and completely disregard anything Mr. Hardegree may have said in making the objection into the record. Is there anyone who couldn't do that? Thank you. You may proceed."

Ark. Stat. Ann. § 43-1012 (Repl. 1964) provides:

"No indictment is insufficient, nor can the trial, judgment, or other proceeding thereon, be affected by any defect which does not tend to the prejudice of the substantial rights of the defendant on the merit."

As we read the record any error on the part of the prosecuting attorney became harmless when the trial court determined that the jurors had not even heard the remark.

The appellant elected not to take the witness stand and the other remarks by the prosecuting attorney occurred during closing argument in this manner:

"You know, members of the jury, I don't mind a defense counsel at all reminding the jury that his client is just as entitled to credibility by the jury as police officers are, and it's proper and right that you be questioned as to whether or not you would give more credence to the statements of a police officer than you would perhaps—

MR. FOREMAN: I object to that, Your Honor.

THE COURT: Yes, sir, I will sustain the objection. (Cont'd. by Mr. Hardegree) Thank you, Your Honor. But has the defendant, members of the jury, shown any reason why the credibility of Richard Daniels, William Sprecher,

Robert Beckham, James Beech, James Lester, or any officer in this case, should be accepted at anything less than we would accept the testimony of a man who appears here, and whose credibility appears to be good.

MR. FOREMAN: Your Honor, I ask for a mistrial. (Cont'd. by Mr. Hardegree) What about—

THE COURT: Members of the jury—(Cont'd. by Mr. Hardegree)—the fact that the witness Penland's testimony stands unchallenged? Absolutely unchallenged. Mr. Penland wasn't even cross-examined. He came in and told you how this man, Marshall Powell, had run a confidence game on him in Corpus Christi, Texas, and stolen that great amount of money from him, and the facts of that case with the exception of names, brands, times and places, was exactly identical. In substance it was exactly identical to this operation here, up to the point where Daniels was handed the bag, and he knew something was wrong. It was identical. But the witness Penland was not even challenged."

When the prosecuting attorney said that he did not mind defense counsel reminding the jury that his client was entitled to as much credibility as police officers, the court took the action requested by appellant and sustained the objection made.[1] Appellant at that time asked for no further relief. The remarks of the prosecuting attorney thereafter fall in the category of fair comment on the evidence in the record. See *Shaddox* v. *State*, 244 Ark. 747, 427 S. W. 2d 198 (1968).

In his contention that the closing argument was a comment on his failure to testify, appellant points out that the jury during its deliberation told the Court: "We

[1]The record does not contain the voir dire examination of the jurors. Such questions are often propounded by counsel for defense on voir dire examination. Appellant does not contend that the statement of the Prosecuting Attorney was false.

have all discussed it, and all of us keep asking this question: Why wasn't Powell brought on the stand." Appellant was entitled to an instruction explaining that his failure · to testify could not be considered as evidence against him, but he specifically requested that the instruction not be given. Furthermore, the jury's question could easily have been raised by his counsel's opening statement to the jury that appellant met some people at the West Memphis dog races who asked him to come to Mena to count the money they were to receive for some guns because they didn't trust their broker. After the State showed that the dog track was closed during the period involved, the defendant's theory that he was commissioned only to see that his principals did not get cheated by their broker left many unanswered questions.

POINT III. The evidence presented by the state is more than ample to support a verdict of guilty. In addition to the evidence recited above, another officer testified that appellant admitted in his presence that he did not use a gun on Daniels to take the money because he thought he could talk Daniels out of the money.

Affirmed.

FOGLEMAN, J., concurs.

JOHN A. FOGLEMAN, Justice, concurring. I concur in the majority opinion. I believe, however, that appellant's contentions as to Points 1 and 3 are somewhat broader in scope than would appear from the majority opinion.

In his motion for new trial, appellant asserted that there was error in the denial of his "Demurrer-Exception and Second Motion to Quash Information." As appears from the excerpt of this pleading quoted in the majority opinion, its substance made it, in the alternative, a motion for a further bill of particulars in respect to the particular deficiencies alleged in the pleading. The only such particular upon which appellant now relies was the failure to state the actual ownership of the money alleged to have been taken by him.

Our statute requires that the state, upon request of a defendant, file a bill of particulars setting out the *act or acts* upon which it relies for a conviction. Ark. Stat. Ann. § 43-1006 (Repl. 1964). This section was a part of Initiated Act No. 3 of 1936. We have recognized that the purpose of this act was to simplify procedures and eliminate technical defenses. See *Underwood* v. *State*, 205 Ark. 864, 171 S. W. 2d 304. This act was implemented by Ark. Stat. Ann. §§ 43-804, 805 (Repl. 1964). See Leflar, The Criminal Procedure Reforms of 1936— Twenty Years After, 11 Ark. Law Rev. 117, 129, et seq. This statute specifically requires that a bill of particulars "state the act relied upon by the state in sufficient details as formerly required by an indictment" and only "with sufficient certainty to apprise the defendant of the specific crime with which he is charged, in order to enable him to prepare his defense." A supplemental bill may be required only if the original one is "not sufficiently definite to apprise the defendant of the specific crime with which he is charged." Prior to the initiated act, it was only required that an indictment contain the title of the prosecution, the name of the court in which presented, the name of the parties and "a statement of the acts constituting the offense, in ordinary and concise language and in such a manner as to enable a person of common understanding to know what is intended." See Crim. Code § 121, C. & M. Dig. § 3028.

It was not error on the part of the trial court to deny a request for a further bill of particulars since the information and the bill of particulars furnished contained all the matters required by the former statute to make a good indictment by grand jury. *Brockelhurst* v. *State*, 195 Ark. 67, 111 S. W. 2d 527; *Bryant* v. *State*, 208 Ark. 192, 185 S. W. 2d 280; *Bennett* v. *State*, 201 Ark. 237, 144 S. W. 2d 476, 131 A. L. R. 908. The *act or acts* were certainly stated in the information and bill of particulars in sufficient detail to apprise the defendant of the specific crime with which he was charged to the extent necessary to enable him to prepare his defense. *Lee* v. *State*, 229 Ark. 354, 315 S. W. 2d 916. This is all that is required. Appellant does not actually argue

that he was unable to prepare his defense. He merely asserts that, lacking the information as to the actual owner of the money, his attorneys could not properly interrogate and exercise challenges of prospective jurors who might have affiliation with such owner. This certainly is not what is contemplated as preparation of his defense in Ark. Stat. Ann. § 43-804. A reversal based upon such a construction would certainly conflict with Ark. Stat. Ann. § 43-1012 (Repl. 1964) which provides that the sufficiency of an indictment shall not be affected by any defect which does not tend to the prejudice of the substantial rights of the defendant *on the merit.* We have held both before and after the adoption of Ark. Stat. Ann. § 43-804 that the defect must prejudice dedefendant's right on the merits. See *Green* v. *State,* 185 Ark. 1098, 51 S. W. 2d 511; *Kansas City Southern Ry. Co.* v. *State,* 194 Ark. 80, 106 S. W. 2d 163; *Underdown* v. *State,* 220 Ark. 834, 250 S. W. 2d 131; *Edwards* v. *State,* 244 Ark. 1145, 429 S. W. 2d 92. We have gone so far as to hold that even an erroneous allegation as to ownership of property taken did not affect any substantial right of the defendant charged, because the offense was described with such certainty as to identify the act so there could be no doubt about the particular offense charged. *Tucker* v. *State,* 194 Ark. 528, 108 S. W. 2d 890. See also Ark. Stat. Ann. §§ 43-1011 and 1014 (Repl. 1964). While the circuit court may well have the discretion to grant a motion for such particulars as those requested by appellant, there is no reversible error in its failure to do so. *Silas* v. *State,* 232 Ark. 248, 337 S. W. 2d 644, cert. denied, 365 U. S. 821, 81 S. Ct. 705, 5 L. Ed. 2d 698.

I understand appellant's third point to be based wholly upon his contention that there was no felonious asportation. He argues that the evidence does not show that he ever had absolute possession of the money, because Daniels' control of it was never completely severed. This argument is based upon evidence that there were probably five state police officers and five federal officers in the immediate vicinity, that there was aerial observation of Daniels' meeting with Powell, and that Daniels had a walky-talky radio transmitter in his boot

by which he could communicate with the plane conducting the observation and two automobiles manned by United States Treasury Department officials, one of which was at a highway intersection and another at a parking lot nearby. The other officers were alerted by radio message in a few seconds after Daniels discovered that the money had been switched. This argument seems wholly untenable to me. According to the evidence, the money was in Powell's possession until he was arrested. During that interval Daniels' possession was totally severed, and Powell was not sufficiently under his control so that the money could be said to be in either possession or control of Daniels.