Joe Grady MURRAH v. STATE of Arkansas

5723                                   486 S.W. 2d 897

Opinion delivered November 13, 1972

[Rehearing denied December 18, 1972.]

*James E. Davis,* for appellant.

*Ray Thornton,* Atty. Gen., by: *Robert H. Crank,* Asst. Atty. Gen., for appellee.

CONLEY BYRD, Justice. Appellant Joe Grady Murrah appeals his convictions for burglary and grand larceny.

The facts stated in the light most favorable to the verdict show that on May 31, 1971, the officers of Texarkana, Texas and Texarkana, Arkansas, had a tip that a series of burglaries would be committed at electrical supply houses. A stake-out was placed at the R.E.A. building located at the intersection of Highway No. 82 and Oats Street in Texarkana, Arkansas. At 11:00 p.m. appellant drove by in a pick-up truck at a slow rate of speed and made a circle on the R.E.A. parking lot. Curtis Wayne Swanger jumped out of the passenger side of the truck while it was rolling at a slow rate of speed. The truck then made its exit back onto Highway No. 82. The officers then watched Swanger break into the R.E.A. building and remove and stack a quantity of copper wire and three chain saws behind a shrub. At exactly 12:00 midnight, appellant returned and parked by the merchandise Swanger had piled up by the shrub. After a portion of the merchandise had been loaded into the truck, Swanger started back into the building and at that time officer Sewell stepped out into the open and yelled, "Both of you halt, this is the police." Swanger started running and appellant attempted to drive off at a high rate of speed. The officers fired several shots from 30:06 rifles, shot guns and a machine gun. Appellant did not stop until both front tires on his truck were flat from the shots fired. When apprehended, appellant had a .38 caliber snub-nosed pistol between

his feet on the floorboard of the truck as well as a loaded rifle behind the seat of the truck.

Appellant denied that he was at the building at 11:00 p.m. and furnished proof to the effect that he could not have been there at that time. His defense to the 12:00 midnight appearance was that everybody knew he was going to run for Sheriff of Bowie County, Texas, and that the Texarkana, Texas officers had conspired with Swanger to entrap him to prevent him from running for sheriff. Appellant contended that Swanger had lured him to the R.E.A. building by informing him that he could repossess at that place and time an automobile he had sold on time and on which the purchaser was in default on the payments.

POINT I. Appellant was not entitled to an instructed verdict of acquital. The proof with reference to the chain saws was that three chain saws were removed from the possession of the R.E.A. Two of the saws belonged to R.E.A. and were introduced as exhibits. The third one had been released to its rightful owner. In *Powell* v. *State*, 251 Ark. 46, 471 S.W. 2d 333, (1971), we held that in a case of larceny ownership of property may be laid either in the owner or the person who had possession at the time of theft.

In making the argument that the State failed to prove the requisite intent, appellant apparently overlooks the fact that by Ark. Stat. Ann. § 41-118 (Repl. 1964), an accessory before the fact is treated as a principal. When viewed in this light there is more than ample evidence.

POINT II. Appellant not having objected to the introduction of the photograph of the merchandise in the back of his truck is not in a position to complain.

The money bag of which he complains was merely identified as having been in the truck at the time of his arrest and was not introduced into evidence. Further-

more, appellant's own testimony with reference to the money bag removed any prejudice in connection therewith.

Appellant in contending that the trial court erred in admitting the pistol and the rifle into evidence relies upon our cases such as *Alford* v. *State*, 223 Ark. 330, 266 S.W. 2d 804 (1954), and *Searcy* v. *State*, 245 Ark. 159, 431 S.W. 2d 477 (1968). Of course those cases have to do with the introduction of evidence to show other crimes committed at another place and time. The items here were not introduced to show the commission of another offense but only to show what the officers found when they stopped appellant's fleeing truck. Consequently we find no merit in the contention.

POINT III. The trial court held a hearing on appellant's motion for new trial. There appellant offered the testimony of two witnesses who testified that Swanger while in jail told them that he had set appellant up with the Texarkana, Texas police to get a better deal for himself on some pending charges. The trial court, while sustaining an objection to the testimony and two proffered affidavits as hearsay, made every effort to get the witnesses to testify as to the actual statements made by Swanger rather than as to their conclusions as to the essence of the conversation. On the record made, we cannot say that the trial court erred in overruling the motion for new trial.

POINT IV. Appellant in support of his contention that he was tried before a jury selected in a constitutionally impermissible manner relies upon *Peters* v. *Kiff*, 407 U.S. 493, 92 S. Ct. 2163, 33 L. Ed. 2d 83 (1972), *Turner* v. *Fouche*, 396 U.S. 346, 90 S. Ct. 532, 24 L. Ed. 2d 567 (1970) and *Whitus* v. *Georgia*, 385 U.S. 545, 87 S. Ct. 643, 17 L. Ed. 2d 599 (1967). The record here shows that the trial court selected nine or ten jury commissioners from different sections of the county to reach a cross section of the county. At least two of the commissioners were of the Negro race. These commissioners were instructed to select jurors from a rep-

resentative cross section of the county without discrimination as to race and that any such list should be as representative of the various townships as possible. The written instructions pointed out that: "As a practical matter, a wide distribution of jurors on each list makes it easier to form a trial panel since there is a probability that thereby jurors need not be trying his neighbor's case, nor be disqualified by having knowledge of the incident which gave rise to the litigation." The jury commissioners, thus selected from the different parts of the county, thereafter selected over 800 prospective jurors to be placed in the jury wheel. Eighty names were drawn from the wheel by chance. Of the eighty names so drawn, 52 were present on the day of trial and only two were of the Negro race. Other proof in the record showed that neither the voter registration list nor the jury wheel list contained a racial designation. The circuit court clerk estimated that the Negro population of the county comprised some 15% to 20% of the total population.

We do not believe that, under the facts here shown, appellant has made a prima facie case of racial discrimination. There is here no showing of a previous and persistent racial discrimination in the selection of jurors in the county. The odds against drawing only two Negroes out of 52 from a list of 800 comprising a cross section of the county containing from a 15% to 20% population are pretty great, but one occasionally draws a perfect hand in a card game even though the odds are greater than 6,000,000 to 1. Therefore, we conclude that, when the jury commissioners comprise a cross section of the county according to race, a showing only that a single panel does not correspond to the racial make-up of the community, does not of itself make a prima facie case of racial discrimination.

POINT V. During the jury's consideration of the case, they asked the trial court if they assessed a penalty on both charges, would the assessments run concurrently? The court at that time told them they had only two

functions: (1) to determine guilt or innocence, and (2) if they found appellant guilty to fix the punishment. The jury returned a verdict of guilty on both charges fixing the punishment at eight years on the burglary and four years on the grand larceny. The trial court after the jury was discharged and in the absence of counsel conferred with some of the jurors individually as to their thoughts on whether the penalties should be concurrent or consecutive. In making the penalties run consecutive, the trial court stated:

> "I did feel that I owed it to you and to society to question some of the jurors what their intent was with their—the manner in which they returned the verdict. It was their desire as expressed to me that the sentences to be run consecutively. I am not disposed to say that my judgment is better than twelve people sitting in the jury box. And when somebody goes to the jury box, then I feel that I should follow what they say."

Under our procedure the determination of whether sentences are to run concurrent or consecutive is left to the discretion of the trial court. Some courts rely upon reports of probation officers or the local sheriffs in making such determinations. We cannot say that a trial court abuses his discretion in discussing such matters with individual jurors after their discharge from the jury box—after all the jurors in this instance had heard not only the witnesses against appellant but also appellant and those witnesses in his favor. Furthermore, appellant and his counsel were present in court when the trial judge informed them of the conversations with the jurors and no objection was made at that time.

POINT VI. Finally appellant contends that the trial court failed to provide him with a complete record of his trial thus denying him an appeal of all prejudicial errors occurring in his trial. We find no merit in this contention.

Appellant in oral argument failed to point out any portion of the record that was missing. Furthermore, we remanded the record to the trial court to determine the status of the record and he found no part of the record missing.

Affirmed.